**Karelyn SIEGLER, Appellant,**

v.

**CENTEQ REALTY, INC., Appellee.**

No. B14–92–01094–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 7, 1994.

Rehearing Overruled May 5, 1994.

Jacqueline Lucci, Robert L. Steinberg, Carl Shaw and John O'Quinn, Houston, for appellant.

Grant J. Harvey, Paul J. Dobrowski, Houston, for appellee.

Before ROBERTSON, CANNON and DRAUGHN, JJ.

## MAJORITY OPINION

DRAUGHN, Justice.

This is an appeal from the granting of summary judgment in favor of appellee, Centeq Realty, Inc., ("Centeq"). Appellant, Karelyn Siegler, sued appellee on a premises liability theory based in negligence for the failure of appellee to provide adequate security. In three points of error, appellant con-

tends that the trial court erred in rendering summary judgment because: (1) genuine issues of material fact exist regarding the control appellee exercised over the premises; (2) the quintessential fact question in a negligence action is properly determined by the jury; and (3) the evidence presented by appellee was legally insufficient. We reverse and remand.

On January 25, 1990, appellant was brutally attacked and kidnapped from the parking garage of Warwick Towers, a high rise condominium in Houston, Texas. Appellant was a resident of Warwick Towers at this time. Appellant initially filed suit against Warwick Towers, Inc., No. 2 ("Warwick Towers"), Warwick Towers Counsel of Co–Owners ("Warwick Counsel"), and Smith Protective Services, Inc. ("Smith"), alleging negligence and gross negligence in failing to provide adequate security at Warwick Towers, and later added appellee as a defendant.

As in all summary judgment cases, we must view the facts in the light most favorable to appellant, as non-movant. United Savings ("United") had become the majority homeowner of Warwick Towers through many foreclosures and owned more than half of all units. United contracted with appellee for the management and promotion of all United-owned units and assigned appellee all voting rights associated with ownership of those units. Appellee maintained an office on the Warwick Towers premises. Appellee also held itself out as the agent and/or representative of Warwick Towers while promoting the property.

United executed an agreement with Warwick Counsel to have a voting agent/representative on the board of Warwick Counsel as long as United owned any interest in Warwick Towers. The president of appellee, Carla VanOver, was the agent for United. VanOver had the power to control, through the exercise of United's proxies, all major decisions of Warwick Counsel and its board, including: (1) nominating and voting for board members; (2) the power to change bylaws and other governing documents; and (3) the power to approve or deny all large expenditures, including amounts to be spent on security and any changes in maintenance

fees. Since appellee controlled fifty (50) percent of the outstanding voting rights, no vote could pass without its approval.

On April 13, 1992, appellee filed its Motion for Summary Judgment supported by the affidavit of Carla VanOver, and set the motion for hearing on May 11, 1992. Appellee agreed to move the submission date to May 25, 1992, to allow appellant a two-week extension to file her response. Since the trial court was not notified of the two-week extension, the trial court prematurely granted appellee's motion for summary judgment. Both parties agreed to a new submission date of June 8, 1992.

On June 1, 1992, appellant filed its Motion for Reconsideration of Summary Judgment Submission, or Alternatively, Motion for New Trial to set aside the summary judgment and her Response to Defendant's Motion for Summary Judgment with the affidavit of Donna Green attached. On June 5, 1992, appellee filed its reply to appellant's response and pointed out the defects in Green's affidavit. On June 9, 1992, appellant filed a notice of hearing for her motion for reconsideration, which set the submission date for June 22, 1992. On June 15, 1992, appellant filed Green's supplemental affidavit, which stated how Green acquired personal knowledge of the facts. On June 17, 1992, appellee filed a motion to strike Green's supplemental affidavit. The parties again reached an agreement to have all pending motions considered on June 25, 1992. Appellee filed the notice of oral hearing for all motions to be heard on July 2, 1992.

On July 2, 1992, the trial court granted appellant's motion for reconsideration from the bench. The trial court also granted summary judgment for appellee on all causes of action pleaded by appellant and signed the order on July 7, 1992. The order granting summary judgment does not specify the grounds relied on for the court's ruling. On August 24, 1992, the trial court denied appellant's motion for new trial and severed appellant's claims against appellee.

In her first point of error, appellant contends that the trial court erred in rendering summary judgment because a genuine issue

of material fact existed regarding the control appellee exercised over the situs of the injury giving rise to this case.

On appeal from the granting of summary judgment, we must determine whether the evidence establishes as a matter of law that there is no genuine issue of material fact. *Rodriquez v. Naylor*, 763 S.W.2d 411, 413 (Tex.1989). In deciding whether a disputed material fact issue exists, the evidence is viewed in favor of the non-movant, resolving all doubts and indulging all reasonable inferences in her favor; and the evidence is taken as true. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548 (Tex.1985). A defendant as movant must either: (1) disprove at least one element of each of plaintiff's theories of recovery; or (2) plead and conclusively establish each essential element of an affirmative defense. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679 (Tex.1979).

Before addressing the merits of the summary judgment, we must address a procedural matter. Appellee argues that the supplemental affidavit of Green was untimely filed and should not have been considered by the trial court. The record reveals that the supplemental affidavit was filed on June 15, 1992, without leave of court. Appellee claims that the supplemental affidavit was filed eight days after the agreed submission date of June 8, 1992. However, the trial court's judgment recites that it heard the motion for summary judgment on July 2, 1992, rather than June 8, 1992. In the absence of a *nunc pro tunc* order, we must consider the hearing to have been held on the date recited in the judgment. *Brooks Fashion Stores, Inc. v. Northpark Nat'l Bank*, 689 S.W.2d 937, 940 (Tex.App.—Dallas 1985, no writ). Furthermore, it is undisputed that the hearing was held on July 2, 1992.

We must now determine if Green's supplemental affidavit was timely filed and before the trial court at the July 2, 1992, hearing. Rule 166a(c) provides that "except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response." TEX.R.CIV.P.

166a(c). Any written response filed on the seventh day before the hearing will be deemed timely and may be properly considered without leave of court. *Wright v. Lewis*, 777 S.W.2d 520, 521 (Tex.App.—Corpus Christi 1989, writ denied); *Benger Builders, Inc. v. Business Credit Leading, Inc.*, 764 S.W.2d 336, 338 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *Volvo Petroleum, Inc. v. Getty Oil Co.*, 717 S.W.2d 134, 137–38 (Tex.App.—Houston [14th Dist.] 1986, no writ). The rule requires the seven days to be computed by counting back from the date of the hearing. *Nickerson v. E.I.L. Instruments, Inc.*, 817 S.W.2d 834, 836 (Tex.App.—Houston [1st Dist.] 1991, no writ).

In this case, appellant filed Green's supplemental affidavit on June 15, 1992. This was sixteen days before the summary judgment hearing held on July 2, 1992. Since the supplemental affidavit was filed more than seven days prior to the date of the hearing, it was timely filed under Rule 166a(c).

Appellee argues that it filed a motion to strike the supplemental affidavit. However, the record reveals that the motion to strike was never ruled on by the trial court. Evidence that has been objected to remains part of the summary judgment evidence unless an order sustaining the objection is reduced to writing, signed, and entered of record. *Eads v. American Bank, NA*, 843 S.W.2d 208, 211 (Tex.App.—Waco 1992, no writ). Since there is no order in the record striking the supplemental affidavit, the affidavit should have remained a part of the summary judgment evidence. Thus, we presume that the trial court considered the supplemental affidavit.

A summary judgment for the defendant, disposing of the entire case, is proper only if, as a matter of law, plaintiff could not succeed upon any theories pleaded. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex. 1983). Once the defendant produces sufficient evidence to establish the right to a summary judgment, the plaintiff must set forth sufficient evidence to raise a fact issue to avoid a summary judgment. *"Moore" Burger, Inc. v. Phillips Petroleum, Co.*, 492 S.W.2d 934, 936–37 (Tex.1972).

■ Appellant's First Amended Petition alleged that appellee was negligent in failing to provide adequate security at Warwick Towers. The essential elements of a negligence action are: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987); *Rosa v. Buddies Food Store,* 518 S.W.2d 534, 536 (Tex.1975). The threshold inquiry in a negligence case is duty. *El Chico,* 732 S.W.2d at 311. Generally, the existence of a duty is a question of law for the court to decide from the undisputed facts surrounding the occurrence in question. *Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 312 (Tex.1983). However, when the evidence does not conclusively establish the pertinent facts or the reasonable inferences to be drawn, the question becomes one of fact for the jury. *Bennett v. Span Industries, Inc.,* 628 S.W.2d 470, 474 (Tex. App.—Texarkana 1982, writ ref'd n.r.e). This is clearly a case where the existence of a duty depends on the factual setting.

■ A summary judgment may be upheld on appeal on only those grounds expressly set out in the motion for summary judgment. Tex.R.Civ.P. 166(a)(c); *Brooks,* 689 S.W.2d at 941; *see also City of Beaumont v. Guillory,* 751 S.W.2d 491, 492 (Tex. 1988). Since the trial court's order granting summary judgment did not specify the grounds upon which it was granted, we will affirm the judgment if any of the theories advanced are meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 567 (Tex.1989); *Rogers v. Ricane Enters, Inc.,* 772 S.W.2d 76, 79 (Tex. 1989).

In its motion for summary judgment, appellee asserted that it was entitled to summary judgment because the unrebutted evidence on file shows that "there is no genuine issue as to any material fact."

Appellee relies solely on Carla VanOver's affidavit as summary judgment evidence to support its motion. VanOver's affidavit read as follows:

2. During the time I was President of Centeq Real Estate Services, Inc., Centeq Realty, Inc. was not an agent or representative of Warwick Towers, Inc. No. 2 (hereinafter "Warwick Towers"). In fact Centeq Realty, Inc. never had any relationship whatsoever with any entity so named.

3. Centeq Realty, Inc. never had a contractual relation with Warwick Towers Counsel of Co–Owners ("Warwick Counsel") nor did it ever undertake to represent Warwick Counsel as its agent.

4. At the time Ms. Siegler was attacked I served on the Warwick Council with at least four (4) other members. I was at that time, and still am, a resident of Warwick Towers. As a voting member of Warwick Counsel my obligations ran to the homeowners—not to Centeq Realty, Inc.

5. During the period in question, Centeq Realty, Inc. did not own, control, or manage the premises known as 1111 Hermann Drive, Houston, Harris County, Texas, nor did Centeq Realty, Inc. have any sort of relationship with Smith Protective Services.

Appellee argues that VanOver's affidavit directly contradicts the following unsupported allegations pleaded by appellant:

(1) "Centeq was ... an agent and/or representative of Warwick Towers, Inc. No. 2 and/or Warwick Counsel relative to the daily operation of the premises located at 1111 Hermann Drive, Houston, Texas;" and that

(2) Warwick Towers premises was "owned, controlled, and/or managed by ... Centeq."

By virtue of this affidavit, appellee claims there is no genuine issue of material fact, and it is entitled to judgment as a matter of law. Appellees' motion for summary judgment attempted to negate the "duty" element of appellant's cause of action by urging that it did not own, control, or manage the property where appellant was attacked.

Appellant responded to appellee's motion with the following four points:

(1) Plaintiff submits the affidavit of Donna Green, a disinterested witness, who directly contradicts Carla VanOver's affi-

davit as well as many of her responses to interrogatories.

(2) Defendant was at all time relevant hereto, an agent and/or representative of Warwick Towers and/or Warwick Counsel.

(3) VanOver, President of Centeq, is also active on the Warwick Counsel, and exercises voting rights as such. Defendant relies on VanOver's self-serving affidavit in support of its Motion for Summary Judgment. However, VanOver contradicts her own affidavit with her responses to interrogatories currently on file with the court.

(4) Finally, this is an action based on negligence, the quintessential fact question.

In short, appellant contended that appellee did owe her a duty of care.

▇▇▇▇ Before appellant can hold appellee to a duty to protect her from the criminal acts of third parties, it must be shown that appellee had control over the premises where the acts were committed. As a general rule, a defendant has no duty to prevent the criminal acts of a third party who does not act under the defendant's supervision or control. *El Chico*, 732 S.W.2d at 313; *Barefield v. City of Houston*, 846 S.W.2d 399, 403 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *La Fleur v. Astrodome–Astrohall Stadium*, 751 S.W.2d 563, 564 (Tex.App.—Houston [1st Dist.] 1988, no writ). However, an exception to this rule exists when criminal conduct is a foreseeable result of a defendant's negligence. *La Fleur*, 751 S.W.2d at 564.

▇▇▇▇ In the present case, the crucial question is who controlled the Warwick Towers premises. The issue of control is a question of fact for the jury to determine. *Hilton v. Texas Investment Bank, NA*, 650 S.W.2d 545, 547 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e); *see also Kirby Forest Industries v. Kirkland*, 772 S.W.2d 226, 229 (Tex.App.—Houston [14th Dist.] 1989, writ denied); *Martinez v. City of San Antonio*, 768 S.W.2d 911, 912 (Tex.App.—San Antonio 1989, no writ).

▇▇▇▇ At the summary judgment hearing, appellee presented summary judgment proof that it neither controlled nor had any right to control the premises where appellant was attacked. Appellee sought to establish by VanOver's affidavit that it did not own, control, or manage the Warwick Towers premises, which would negate any duty to appellant. However, appellant presented controverting evidence, which consisted of Green's original and supplemental affidavit, the advertisements of Warwick Towers, and responses to interrogatories, that sufficiently controverted the issue of control, and thus defeated the appellee's right to a summary judgment. Green's original and supplemental affidavits directly contradicted VanOver's affidavit and raised a fact issue as to who controlled the Warwick Towers premises and the extent of that control. We note that the controverting summary judgment evidence need only be sufficient to raise a fact issue on the element negated by the movant's summary judgment evidence. *Cloys v. Turbin*, 608 S.W.2d 697, 700 (Tex.Civ.App.—Dallas 1980, no writ). We find that the controverted issue of control on the record before us precludes a summary judgment for appellee. We cannot even reach the duty question until the trial court or jury resolves the issue of control. Duty rides on the back of control. Without control, there is no duty; with control, duty generally attaches. Control here necessarily implicates the duty issue of providing adequate security. Thus, appellee did not conclusively negate the duty element of appellant's cause of action. We sustain appellant's first point of error.

In view of our sustaining appellant's first point of error, it is unnecessary to address points of error two and three. We reverse the summary judgment and remand the cause to the trial court.

ROBERTSON, Justice, dissenting.

Appellant's first amended petition named as defendants Warwick Towers, Smith Protective Services, Warwick Tower Counsel (sic) of Co–Owners and Centeq Realty. Warwick Towers was a high-rise condominium project located at 1111 Hermann Drive in Houston; Smith Protective Services was a

security company providing security to Warwick Towers; Warwick Council[1] was a non-profit corporation chartered as a "homeowners association" under the Internal Revenue Code to care for Warwick Towers Association property, and Centeq Realty was alleged to be "an agent and/or representative of Warwick Towers and/or Warwick Counsel (sic) relative to the daily operation of the premises located at 1111 Hermann Drive." Appellant alleged that she was assaulted and kidnapped by an unknown assailant "while on premises owned, controlled, and/or managed by Defendant Warwick Towers, Warwick Counsel (sic), and Centeq Realty located at 1111 Hermann Drive." Appellant alleged that "Defendants" had the duty of reasonable care to protect invitees such as plaintiff from criminal assaults by third persons; that defendants failed to provide adequate security for the premises; they were therefore negligent and their negligence proximately caused plaintiff's injuries.

Centeq answered and subsequently filed motion for summary judgment and submitted as its summary judgment proof the affidavit of Carla VanOver, President of Centeq Realty, at the time of the occurrence in question. The pertinent portions of her affidavit were:

2. During the time I was President of Centeq Real Estate Services, Inc., Centeq Realty, Inc. was not an agent or representative of Warwick Towers, Inc. No. 2 (hereinafter "Warwick Towers"). In fact Centeq Realty, Inc. never had any relationship whatsoever with any entity so named.

3. Centeq Realty, Inc. never had a contractual relationship with Warwick Towers Counsel (sic) of Co–Owners ("Warwick Counsel" (sic)) nor did it ever undertake to represent Warwick Counsel (sic) as its agent.

4. At the time Ms. Siegler was attacked I served on the Warwick Counsel (sic) with at least four (4) other members. I was at that time, and still am, a resident of Warwick Towers. As a voting member of Warwick Counsel

(sic) my obligations ran to the homeowners—not to Centeq Realty, Inc.

5. During the period in question, Centeq Realty, Inc. did not own, control, or manage the premises known as 1111 Hermann Drive, Houston, Harris County, Texas, nor did Centeq Realty, Inc. have any sort of relationship with Smith Protective Services.

6. Centeq Realty, Inc. was not Karelyn Siegler's landlord, nor was Centeq Realty, Inc. her landlord's manager or leasing agent.

Plaintiff/appellant responded but her only summary judgment proof material to the denial by Centeq of a duty (because of no ownership, control, management, or agency relationship) was the affidavit of Donna Green, who was at the time in question the General Manager of Warwick Council of Co–Owners. Donna Green's affidavit, in material part, stated:

2. Centeq Realty, Inc., (hereinafter Centeq), is and was, at all times relevant hereto, the agent/representative of the majority homeowner of Warwick Towers, Inc. No. 2, (hereinafter Warwick Towers), United Savings, (hereinafter US).

3. As agent/representative of US, Centeq controlled, by proxy vote, the majority of total homeowner votes outstanding for the Warwick Towers homeowner's association, Warwick Towers Counsel (sic) of Co–Owners, (hereinafter Warwick Counsel (sic)). This is because the homeowners votes were weighted by square footage owned, and US was the majority homeowner. Centeq, via Carla VanOver, had far more than one vote, she had the controlling votes in all homeowner meetings via US proxies.

4. Centeq, was able to control all homeowner association votes, which included nominating and voting in the Board Members for Warwick Counsel (sic). Also included in this power, was the ability to change the bylaws or other

---

1. Appellant attached the Articles of Incorporation for Warwick Council of Co-owners to her response to the motion for summary judgment.

governing documents, approve or deny large expenditures, and changes in maintenance fees.

5. As a direct result of the proxy votes held by Centeq, Centeq was able to select a majority of the Board that voted in the best interest of Centeq and US, to the detriment of Warwick Towers and inconsistent with the goals of Warwick Counsel (sic). This control contributed to Warwick Counsel's (sic) refusal to make the financial expenditures necessary in order to provide adequate security in the very parking garage at issue.

6. There was, however, an agreement between Warwick Counsel (sic) and US, that US would have a voting representative, i.e., an agent/representative of Centeq on the Board of Warwick Counsel (sic), as long as US held any interest in Warwick Towers. This agent/representative was in fact, Carla VanOver, and it was in the Board Member capacity that she exercised one vote. However, even that is misleading because of her majority vote at homeowners' meetings which gave her control to nominate and elect the Board Members who would vote in line with her.

7. Through the voting proxies granted by US, Centeq established a relationship with Warwick Towers and Warwick Counsel (sic) based on control and power, not contract. At all times relevant hereto, Centeq exercised control of all decisions made by Warwick Towers and Warwick Counsel (sic), and the Warwick Counsel (sic) Board.

8. At all times relevant hereto, Centeq held itself out to be an agent/representative of Warwick Towers through advertisements, phone listings of Warwick Towers with Centeq numbers, and maintaining a sales, leasing and management office on the Warwick Towers premises, which was staffed full-time by Centeq employees. The advertisery documents attached hereto are true and correct copies of advertisements to the public by Centeq of Warwick Towers. These advertisements were maintained in the regular course of business and it was the business of Centeq to maintain files of those advertisements.

9. Centeq, acting on behalf of majority homeowner US, managed, leased, and attempted to sell the majority of units at Warwick Towers. It also managed all units owned by US, which, as previously stated, was percentage majority at Warwick Towers.

Also attached to appellant's response to the summary judgment were various newspaper advertisements, referenced in Green's affidavit, reflecting that Warwick Towers condominiums were being marketed by Centeq Realty.

It is elementary that allegations of plaintiff's petition cannot constitute summary judgment proof. Accepting, as we must, the fact that we must view all the summary judgment proof in favor of the non-movant and that we must resolve all doubts in favor of the non-movant, I cannot discern how appellant's/plaintiff's summary judgment proof was sufficient to raise a fact issue sufficient to defeat appellee's/defendant's summary judgment.

Succinctly stated, plaintiff/appellant alleged that Centeq Realty was liable because:

1. it was an agent or representative of Warwick Towers and the Warwick Council of Co–Owners "in the daily operation of" [the condominium regime], and

2. Centeq "owned, controlled and/or managed" the premises on which she was injured.

Centeq's summary judgment proof showed that it (Centeq)

1. was not an agent or representative of Warwick Towers,

2. had no contractual relationship with Warwick Council of Co–Owners nor did it undertake to represent the council as its agent,

3. did not own, control, or manage the premises in question, and

4. it was not plaintiff's landlord, her landlord's manager or leasing agent.

In the absence of summary judgment proof sufficient to raise a fact issue on one or more of these issues, defendant/appellee was entitled to summary judgment.

Plaintiff/appellant attempted to raise such fact issue by proof that:

1. United Savings was the majority homeowner of the Warwick Towers Condominium regime,

2. Centeq was the marketing agent for United Savings in the sale of individual Warwick Towers Condominium units,

3. because United Savings was the majority homeowner in Warwick Towers, it controlled the homeowner association's (the Council's) votes,

4. Because Centeq was United Savings agent/representative, Centeq by proxy, controlled the votes of the council of co-owners,

5. Since Centeq controlled the votes of the council, "this contributed to Warwick Counsel's (sic) refusal to make the financial expenditures necessary in order to provide adequate security," and

6. Centeq, as an agent of the majority homeowner (United Savings) "managed, leased and attempted to sell the majority of the units at Warwick Towers."

While appellant's summary judgment proof might have been sufficient to raise a fact issue over whether United Savings through Centeq Realty through Carla VanOver constituted a majority vote of the Warwick Council of Co-Owners, this is, in my opinion, totally immaterial. While under the allegations of plaintiff's/appellant's petition the Warwick Towers Council of Co-Owners could be liable, there were no allegations which could render Centeq Realty liable. The pleadings, of course, outline the issues to be addressed in the motion for, and response to, summary judgment.

I believe the trial judge properly found that plaintiff's/appellant's summary judgment proof did not raise a fact issue. The judgment should be affirmed.