**DUDERSTADT SURVEYORS SUPPLY, INC., Appellant,**

v.

**ALAMO EXPRESS, INC., Appellee.**

No. 04–83–00297–CV.

Court of Appeals of Texas, San Antonio.

Feb. 15, 1985.

Rehearing Denied March 12, 1985.

David W. Rogers, San Antonio, for appellant.

Charles M. Jefferson, San Antonio, for appellee.

Before BUTTS, REEVES and TIJERINA, JJ.

## OPINION

REEVES, Justice.

This case concerns a fraudulent cashier's check received by a common carrier in payment of a C.O.D. charge. The trial court absolved the carrier from liability and the shipper brings this appeal.

The uncontroverted facts are Duderstadt Surveyors Supply, Inc. (Duderstadt)

shipped collect on delivery (C.O.D.) by Alamo Express, Inc. (Alamo), survey instruments to Petroleos Mexicanos (Pemex) in care of its agent, Raul Buenrostro. These goods were shipped by Alamo to its terminal in McAllen, Texas. A man purporting to be Raul Buenrostro picked up the goods consigned to Pemex and tendered, in payment, a purported cashier's check drawn on Union National Bank of Laredo. Upon presentment for a collection, the Union National Bank of Laredo determined it was a forged instrument and refused payment.

Demand for payment was made upon Alamo and, upon its refusal, suit was instituted. The trial court found that Alamo did not breach any duty which it owed to Duderstadt and entered judgment accordingly.

The legal question in this appeal is who, in a C.O.D. shipment, bears the risk of loss for a forged bank cashier's check, the shipper or the carrier.

Duderstadt brings forth ten grounds of error which can be summarized as follows:

(1) The trial court erroneously found that Alamo's responsibility in collecting the C.O.D. charge was that of an agent and its duty was limited to the exercise of due care and diligence in forwarding the cashier's check.

(2) The trial court erroneously impliedly found that Duderstadt ratified any wrongful act and waived or was estopped from asserting any rights against Alamo by accepting the alleged cashier's check.

(3) There was legally and factually insufficient evidence to establish any of the elements of the aforementioned implied findings of the trial court.

(4) Failure of the trial court to file findings of fact and conclusions of law after timely request.

1. Texas Rules of Evidence, Rule 201, Judicial Notice of Adjudicative Facts.
    (a) Scope of Rule. This rule governs only judicial notice of adjudicative facts
        *    *    *    *    *    *
    (d) When mandatory. A court shall take judicial notice if requested by a party and supplied with the necessary information.

(5) Refusal to grant a new trial in the interest of justice.

Duderstadt and Alamo entered into a written contract styled, "Uniform Straight Bill of Lading." The contract in part states:

This shipment is tendered and received subject to the terms and conditions of Carrier's Uniform Straight Bill of Lading as filed with the Interstate Commerce Commission.

This bill of lading was introduced into evidence as well as the following rules of the National Motor Freight Classification 100–H: a form styled Uniform Straight Bill of Lading, Item 128 and Item 430, collect on delivery (C.O.D.) shipments. Item 430 provides, in pertinent part:

Sec. 9. Only the following forms of payment will be accepted in payment of COD amounts;
    (1) cash ...;
    (2) bank cashier's check;
    (3) bank certified check;
    (4) money order; ....

All checks and money orders shall be made payable to the consignor. The carrier will accept checks and money orders only as the agent of the consignor and the carriers' [sic] responsibility is limited to the exercise of due care and diligence in forwarding such checks and money orders to consignor.

Duderstadt, while this case was pending on appeal, filed a motion in this court to take judicial notice of Tariff 100–C, Item 170 and Item 180, Railroad Commission of Texas. The motion was uncontested and these instruments are now before this court for our perusal.[1] It is uncontroverted that these tariff rules were in effect at the time of the contract of the parties. Tariff 100–C, Item 170, provides, in part:

(e) Opportunity to be heard. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, request may be made after judicial notice has been taken. (f) Time of taking notice. Judicial notice may be taken at any stage of the proceeding.

354

COLLECT ON DELIVERY (COD) SHIPMENTS RULES (Provisions in addition to NMFC Item 430)

The following Rules and Regulations will also apply with respect to the transportation, handling and collection of COD shipments by all intrastate common carrier motor carriers:

1.

Every common carrier motor carrier transporting for hire intrastate commerce under a certificate issued by the Railroad Commission of Texas shall. . . .

2.

\* \* \* \* \* \*

(c) All collections for COD shipments by a delivering carrier shall be at the risk of the delivering carrier.

Item 180 is a list of the common carrier motor carriers who filed with the Motor Transportation Division of the Railroad Commission of Texas the proper C.O.D. bond called for by the appropriate rule. Among those listed is Alamo Express, Inc.

The state of the appellate record, therefore, is one where we have before us evidence, not available to the trial court, which mandates a different and more accountable standard of conduct of the carrier than that introduced and considered by the trial court. The contractual standard of conduct presented to the trial court in Item 430, section 9, of the National Motor Freight Classification 100–H is for the carrier to exercise due care while Item 170, section 2(c), of the Railroad Commission provides that collections of the delivering carrier shall be at the risk of the carrier.

A reading of the exhibits reveals the Interstate Commerce Commission's Uniform Straight Bill of Lading and Item 430 were made subject and inferior to Railroad Commission Item 170. The suggested form for the Interstate Commerce Uniform Straight Bill of Lading states that items would be "received, subject to the classification and tariffs in effect on the date of the issue of this Bill of Lading," and Railroad Commission Item 170 provides that its C.O.D. shipment rules are in addition to the National Motor Freight Classification Item 430.

Pursuant to Rule 201 of the Texas Rules of Evidence, Tariff 100–C, Item 170 and Item 180, Railroad Commission of Texas, is properly before this court, but whether it can be considered by this court in its determination of this case is another matter.

■ Appellate courts are reluctant to take judicial notice of Commission's actions when the trial court was not afforded the opportunity to examine and take into consideration said actions. *Sparkman v. Maxwell*, 519 S.W.2d 852, 855 (Tex.1975); *Continental Oil Co. v. Simpson*, 604 S.W.2d 530, 535 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.); *Myers v. Cliff Hyde Flying Service, Inc.*, 325 S.W.2d 841, 846 (Tex.Civ. App.—Houston 1959, no writ).

■ The standard of care required of the carrier as set forth in Item 170, section 2(c), was not pled or proven in the trial court. It is well settled Texas law that an allegation not contained in the pleadings nor otherwise raised or proven in the trial court cannot be raised for the first time on appeal. *State of California Department of Mental Hygiene v. Bank of Southwest National Association*, 163 Tex. 314, 354 S.W. 576, 581 (1962). Tariff 100–C, Item 170 and Item 180, Railroad Commission of Texas, will not be considered in determining the merit of Duderstadt's appeal.

Nor can we remand this case in the "interest of justice" as the trial court has entered a correct judgment on the record before it. An errorless judgment of a trial court cannot be reversed in the interest of justice. *City of Houston v. Blackbird*, 394 S.W.2d 159, 165 (Tex.1965); *Davis v. Davis*, 141 Tex. 613, 175 S.W.2d 226, 230 (1943); Calvert, *In the Interest of Justice*, 4 ST. MARY'S L.J. 291 (1972).

■ We will now consider the evidence presented to the trial court and the law applicable thereto. The bill of lading was prepared by Alamo and if it is subject to

two constructions, it will be construed against Alamo. *Amory Manufacturing Co. v. Gulf, C. & S.F. Railway Co.*, 89 Tex. 419, 37 S.W. 856, 857 (1896); *Gulf, C. & S.F. Railway Co. v. Hines*, 250 S.W. 1013, 1016 (Tex.Comm'n App.1923, opinion adopted).

█ Alamo's responsibility in its contract with Duderstadt was twofold; one as a bailee to transport the goods and the other as the consignor's agent to collect the price from the consignee. There is no common law duty to act as a collection agent and the C.O.D. obligation is a special service which is not within the scope of the carrier's public services. *National Van Lines, Inc. v. Rich Plan Corp.*, 385 F.2d 800, 802 (5th Cir.1967).

█ Pursuant to Item 430 of the National Motor Freight Classification 100–H, Alamo's obligation in accepting the money order as the agent of Duderstadt was: "Limited to the exercise of due care and diligence in forwarding such ... money order" to Duderstadt.

█ RESTATEMENT (SECOND) OF AGENCY, § 426 (1958) provides:

Unless otherwise agreed, an agent employed to collect from others goods or money due the principal has the duty of using reasonable care and skill in making such collections in accordance with the directions of the principal.

When the agent acts within the scope of the agent's authority and follows the instruction of the principal, the agent will not be liable for a loss of the principal as long as the agent has acted with due care, diligence and loyalty to the principal. *See Ladonia Dry Goods Co. v. Conyers*, 58 S.W. 967, 968 (Tex.Civ.App.1900, no writ); *Texas Loan Agency v. Swayne*, 27 S.W. 183, 185 (Tex.Civ.App.1894, no writ). There is sufficient evidence for the trial court to find that Alamo exercised due care and diligence in forwarding the cashier's check. The cashier's check tendered and accepted by Alamo showed nothing on its face to question its authenticity. Both Duderstadt and its bank handled the cashier's

check and accepted the check as being genuine. Augustine Pena, an employee of appellant, inspected the check and testified that it appeared to him to be a normal and valid cashier's check. Alan Lentz, an officer of Alamo, testified that there was nothing about the check which would lead him to suspect its authenticity. Wilmer Duderstadt, the president of the appellant, testified that he saw the check and deposited it in the Brooks Field National Bank.

Duderstadt has cited *Joseph Mogul, Inc. v. C. Lewis Lavine, Inc.*, 247 N.Y. 20, 159 N.E. 708 (1928) as authority that a carrier is responsible for the consequences of accepting a forged check. In *Mogul*, the defendant failed to accept cash but accepted, instead, the consignee's check to the order of the consignor. The court held:

The law is settled that, in the absence of agreement or custom to the contrary, an agent to collect may accept money, and nothing else.

159 N.E. 708 at 709. Alamo's specific authority was to accept the cashier's check and forward it to Duderstadt.

We are of the opinion that there is more than adequate evidence to support the holding of the trial court that Alamo acted with reasonable care and diligence.

█ Duderstadt asserts error due to the failure of the trial court to make findings of fact and conclusions of law as called for by Rule 296 of the Texas Rules of Civil Procedure. The record shows that Duderstadt requested findings of facts and conclusions of law, and that both Alamo and Duderstadt duly filed proposed findings of fact and conclusions of law. The trial court acknowledged receipt of Alamo's findings but there is no order in the record showing their approval. Laboring under the misunderstanding that Alamo's findings of fact and conclusions of law had been approved, Duderstadt filed a motion for additional findings of fact and conclusions of law. A hearing was held on the motion and some of the findings were granted while others denied. It is apparent from this action that the trial court, Alamo and Duderstadt considered Alamo's find-

ings of fact and conclusions of law approved by the court.

The purpose of findings of fact and conclusions of law is to narrow the area of dispute so that appellant can limit its brief to the legal points of error raised by the court's findings. The failure of the trial court to file findings of fact and conclusions of law does not call for a reversal if the record before the appellate court shows that the complaining party has suffered no injury. *Star Corp. v. Wolfe*, 463 S.W.2d 292, 293 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.). We fail to see how Duderstadt has been injured. Duderstadt was permitted to file, subsequent to the filing of appellee's brief, a supplemental brief in which he added three points of error. In addition, Duderstadt was permitted to file a reply brief and a post-submission brief. The court has before it a complete statement of facts. This point of error is overruled.

In view of our disposition of this case it is unnecessary to pass on appellant's other points of error.

We affirm the judgment of the trial court.