Maria MARTINEZ, Mother of Celestino A. Martinez, Sr., Deceased, Individually and on Behalf of the Minor Children et al., Appellants,

v.

The CITY OF SAN ANTONIO, Appellees.

No. 04–88–00099–CV.

Court of Appeals of Texas, San Antonio.

April 5, 1989.

Louis E. Marshall, John E. Schulman, Schulman, Noll & Schulman, San Antonio, for appellants.

Paula Dlugosz, Charles S. Frigerio, City Attys. Office, Mark R. Stein, Plunkett, Gibson & Allen, San Antonio, for appellees.

Before BUTTS, REEVES and CHAPA, JJ.

## JUDGMENT

REEVES, Justice.

This is an appeal from a summary judgment granted to the City of San Antonio against Maria A. Martinez, Celestino A. Martinez, Jr., and the minor children of Celestino A. Martinez, Sr., who was killed in a truck-bicycle collision on September 9,

1986, in the 2300 block of Roosevelt Avenue in San Antonio.

Appellants claim that as the deceased was riding his bicycle on Roosevelt Avenue, he suddenly came upon a large, unprotected hole, supposedly on the shoulder abutting upon and along the paved portion of the street. To avoid riding his bicycle into the hole, the deceased turned his bicycle to his left. He was then struck by a tractor-trailer rig owned and operated by L & H Packing Company. Appellants first brought suit against L & H and later amended their petition to include the City as a defendant. The City moved for summary judgment and severance which was granted by the trial court. Though appellant presents many arguments and points of error, we find that one is dispositive of this appeal. We reverse and remand for trial.

In the City's Motion for Summary Judgment, the City claims it owed no duty to the deceased because it has no control over (1) the design, (2) the construction, or (3) the maintenance of the 2300 block of Roosevelt Avenue. The supporting affidavit from David C. Steitle, San Antonio Director of Public Works, states, in pertinent part, as follows:

I know from my own personal knowledge that the City of San Antonio did not design or construct the 2300 block of Roosevelt Avenue nor does it maintain the said roadway.

By virtue of this affidavit, the City avers there is no genuine issue of material fact and the City is entitled to judgment as a matter of law.

Appellant's response to the City's Motion argued against such judgment because (1) a city has exclusive control and power to prevent and abate a public nuisance; (2) a city has the jurisdiction and remedial powers to protect the public that travels over city streets; (3) a city may not delegate this duty and responsibility; (4) the excavation (pot-hole/chughole) that contributed to the death of Mr. Martinez was in the shoulder abutting upon and along the paved portion of the street and (5) the excavation was a special defect for which the City had responsibility.

A summary judgment is a harsh remedy which must be strictly construed. *First National Bank v. Rector*, 710 S.W.2d 100, 102 (Tex.App.—Austin 1986, writ ref'd n.r. e.). The purpose of the summary judgment rule is to aviod the conventional trial of clearly unmeritorious claims or untenable defenses. *Salinas v. Crown Central Petroleum*, 647 S.W.2d 384, 387 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). Its purpose is not to deprive litigants of their rights to a full, conventional trial if there are involved in the case any material questions of fact. *Id.* This appellate court is required to view the summary judgment in the light most favorable to appellants and resolve against the City any doubt as to the existence of a genuine issue of material fact. *See Id.*

■ By the City's Motion, it refuses any responsibility for the entire 2300 block; the supporting affidavit rejects responsibility for the maintenance of the "roadway." Appellants' argument concerning the fact that the excavation was on the shoulder is ignored. TEX.REV.CIV.STAT.ANN., article 6701d, Subdivision III, § 13(c) (Vernon 1977) defines "roadway" as that portion of a highway improved, designed, or ordinarily used for vehicular travel, *exclusive of the berm or shoulder*. (Emphasis added). If the shoulder is not part of the "roadway," then the City's supporting affidavit accomplishes nothing. The crucial question is who controls the shoulder on Roosevelt Avenue. In *City of Denton v. Van Page*, 701 S.W.2d 831, 835 (Tex.1986), the Court explained that liability for a dangerous condition existing on real property may lie with the person, or entity, who has assumed control over and responsibility for the premises. We find that the question of control precludes a summary judgment for the City.

However, the City maintains, on appeal, that alleged procedural defects on the part of appellants—namely that appellants did not offer controverting summary judgment proof—entitles the City to the verdict. A Motion for Summary Judgment shall state

a specific ground therefor. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 674 (Tex.1979). The City seeks to negate a ground of appellants' cause of action by specifically denying it had a duty to deceased. When the fact relied upon by the movant is set before the court, the non-movant then must expressly present to the trial court any reason seeking to avoid movant's entitlement and appellant must present summary judgment proof *when necessary* to establish a fact issue. *Id.* at 678. (Emphasis ours) In this case, did the appellants expressly present a reason to block a summary judgment? Appellants' sworn reply to the City's motion for summary judgment, in relevant part, states as follows:

> The City's duty to maintain safe streets free of hazards which constitute a public nuisance is not limited to travelled portions of the street; when the hazards or dangerous condition is in such proximity to the street that it is not improbable that it would result in injury to those using the street in [an] ordinary manner, the City has a duty to either remove the hazard, or adequately warn motorists until the road is made safe.

> The allegations of Plaintiffs' Third Amended Original Petition (as well as prior petitions) show that there were excavations in the shoulder abutting upon and along the paved portion of Roosevelt Avenue ...

■ This portion of the answer clearly shows that part of appellants' allegations concern the shoulder of the street. This written response to the motion fairly apprises the movant and the court of the issue the non-movant contends should defeat the motion. *Id.* Further, since the City's supporting affidavit did not adequately deal with the issue of the shoulder, appellants had no duty to present controverting summary judgment proof. *See*

*Pinckley v. Gallegos,* 740 S.W.2d 529, 531 (Tex.App.—San Antonio 1987, writ denied).

This court further finds another reason why this summary judgment cannot be upheld.

Appellant has moved this court to take judicial notice of City of San Antonio Ordinance Number 44184, enacted on August 8, 1974, which approves a Maintenance Agreement executed by the City and the State of Texas.[1] The agreement provides that U.S. Highway 281, from Jct. I.H. 35 (at Alamo Street) to Jct. I.H. 410 South is a non-controlled access highway.

The State's responsibilities include the following:

1. Maintain the pavement, base and its support and maintain the shoulders on those sections where there is no curb and gutter.
2. Install and maintain normal highway markings necessary for directing highway traffic in a safe and efficient manner, which shall include normal route markers, directional and destination signs, speed limit signs, stop or yield signs that control the flow of traffic on State Highway routes, city limit signs, warning signs, centerline, lane line and no-passing barrierline stripes, painted or button medians or islands, edge lines, and such other pavement markings considered necessary for direction of traffic. Any other traffic striping desired by the City may be placed and maintained by the City subject to the approval of the State.
3. Assist the City in sweeping and otherwise cleaning the pavement, in mowing and cleaning of litter, and in maintenance of roadway ditches on those sections of State Highway routes where and to the extent that such duties are delineated on Exhibit "A".[2]

---

1. TEX.REV.CIV.STAT.ANN. art. 6673b (Vernon 1977) permits a City's governing body and the State Highway Commission to enter into agreements involving the maintenance of state highways. *See Alvarado v. City of Lubbock,* 685 S.W.2d 646, 648 (Tex.1985).

2. Exhibit "A" is a list of non-controlled access highways included in the maintenance agreement.

4. Assist in snow and ice control as availability of labor and equipment will allow.

The City's responsibilities include the following:

1. Prohibit angle parking, except upon written approval by the State after traffic and engineering surveys have been conducted to determine that the roadway is of sufficient width to permit angle parking without interfering with the free movement of traffic.

2. Install and maintain all parking restriction signs, school signs and markings, pedestrian crosswalks, parking stripes and special guide signs when agreed to by the State. Signing and marking of intersecting city streets to State Highway Routes will be the full responsibility of the City.

3. Require installations, repairs, removals or adjustments of publicly or privately owned utilities or services to be performed in accordance with State Highway Department specifications and subject to approval of the State.

4. Retain all functions and responsibilities for maintenance, control, supervision, and regulation which are not specifically described as the responsibility of the State. The assistance by the State in maintenance of roadway ditches does not relieve the City of its responsibility for drainage of the highway facility within its corporate limits except where participation by the State other than above is specifically covered in a separate agreement between the City and the State.

A close reading of this agreement shows that the State is responsible for a shoulder where there is no curb and gutter. The City is responsible for all other matters not specifically delegated to the State. Clearly then a fact-finding is necessary as to the presence or absence of a curb and gutter, which also precludes any summary judgment. *See Webb v. Eledge,* 678 S.W.2d 259, 261–262 (Tex.App.—Amarillo 1984, no writ).

This ordinance and agreement was not presented to the trial court at the hearing on the City's Summary Judgment Motion. Even though this court has granted this motion, appellate judicial notice presents a thorny issue. In *Sparkman v. State,* 519 S.W.2d 852, 855 (Tex.1975), the Plaintiff had forwarded to the Texas Supreme Court the 1967 Texas Manual on Uniform Traffic Control Devices and requested the Court take judicial notice of the provisions therein. The Court chose to settle the appeal by an alternate method. As to appellate judicial notice, the Court said:

> ... an appellate court is naturally reluctant to take judicial notice of matters such as municipal charters and regulations promulgated by state agencies when the trial court was not requested to do so and was not given an opportunity to examine the necessary source material (citation omitted). This does not mean that we would refuse to take judicial notice under similar circumstances where necessary to avoid an unjust judgment. *Id.*

In *Duderstadt Surveyors Supply v. Alamo Express Inc.,* 686 S.W.2d 351, 354 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.), this court was asked to take judicial notice of a regulatory agency rule. While this court held the agency rule was properly before the court, this court was reluctant, as are all appellate courts, to consider the rule because "an allegation not contained in the pleadings nor otherwise raised or proven in the trial court cannot be raised for the first time on appeal." *Id.* In *City of Dallas v. Moreau,* 718 S.W.2d 776, 781 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.), the court construed TEX.R.CIV. EVID. 201(f) to mean that judicial notice may be taken at any stage of the proceeding, including appeal. *See also F.S. James and Co. v. West Texas Compress,* 741 S.W. 2d 571, 573 (Tex.App.—Eastland 1987, no writ).

Legal scholars view Rule 201(f) as allowing judicial notice for the first time on appeal. *See* Wellborn, *Judicial Notice Under Article II of the Texas Rules of Evidence,* 19 ST. MARY'S L.J. 6 (1987); Lar-

kin, Article II: Judicial Notice, Texas Rules of Evidence Handbook, 20 Hous.L.Rev. 107, 122 (1983); McCORMICK, HANDBOOK OF THE LAW OF EVIDENCE § 333 at 773 (2d ed. 1972; Supp.1978). Professor Wellborn is of the opinion that the use of the permissive word "may" in the rule vests the appellate court with discretion as to its decision. *Wellborn, supra* at 20.

██ In this case, this court, in its discretion, has determined to take judicial notice. This case presents the very type of situation alluded to in *Sparkman.* The affirmation of the summary judgment would allow an injustice. The above-cited agreement was signed in 1974 and was in full force the day Martinez was killed. The City's employee's sworn affidavit and the City's own motion contain all-inclusive statements that the City has no responsibility as to Roosevelt Avenue. This is simply not the truth on its face. Even though the affidavit uses the term "roadway" rather then "street," "highway," or some other like term, this court refuses to be a party to a semantical word game. In this respect, the City has been less than candid.

In regard to the affidavit, appellants take the position the City has violated TEX. R.CIV.P. 166a(g) in that the City's affiant knew, or should have known, his affidavit contained false information and appellants ask for damages. Technically the affidavit is not false as to the fact the City apparently does not, by the agreement cited above, maintain the roadway, if "roadway" is defined to exclude the shoulder. The affidavit was meant to relieve the City of a duty to the deceased. Whether or not the terms of the agreement will implicate the City still needs to be ascertained. The court finds that such a fact question will preclude damages for a false affidavit.

██ The City also claims to be immune from liability based on TEX.CIV.PRAC. & REM.CODE ANN. §§ 101.055(3), 101.022(a) and 101.060 (Vernon 1986). A claim for a tort committed by the municipality while acting in a proprietary function may not be brought under the Texas Tort Claims Act because section 18(a) thereof expressly provides that the Act shall not apply to any proprietary function of a municipality. *Turvey v. City of Houston,* 602 S.W.2d 517, 519 (Tex.1980). The maintenance of streets in a safe condition is a proprietary function and a City is liable for its negligence in the performance of this function. *Jezek v. City of Midland,* 605 S.W.2d 544, 546 (Tex.1980). This duty is not limited to the traveled portion of the street alone, but extends to the prevention of defects outside the traveled or improved portion of the street if its proximity thereto renders it probable that such defect will result in injury to those using the improved portion of the street. *Id.*

Therefore, the immunity question is not applicable in this case. We reverse and remand this cause to the trial court for a trial on the merits.