**Affirmed and Opinion filed May 17, 2012.**



**In The**

# Fourteenth Court of Appeals

**NOS. 14-10-00821-CV**
**14-10-00856-CV**
**14-10-01145-CV**

**MILTON GARCIA, Appellant**

**V.**

**BANK OF AMERICA CORPORATION, BAC HOME LOAN SERVICING, LP,**
**and NEWPORT INSURANCE COMPANY, Appellees**

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-59268**

## O P I N I O N

In this consolidated appeal, Milton Garcia appeals from the trial court's grant of summary judgments favoring appellees, Bank of America Corporation ("BOA"), BAC Home Loan Servicing, LP ("BAC"), and Newport Insurance Co. ("Newport"). BOA owned the mortgage on Garcia's home, BAC is a mortgage servicing company that serviced Garcia's mortgage, and Newport issued a lender-placed insurance policy to

BOA on Garcia's property. Seeking compensation for damage his property sustained in Hurricane Ike, Garcia alleged that he was a third-party beneficiary of the insurance policy Newport issued to BOA, and raised a variety of claims against BOA and BAC related to the procurement of insurance and management of an escrow account. We affirm.

## I. Background

Garcia purchased a home in Harris County in 1998, with the aid of a home equity loan. Pursuant to the mortgage agreement, Garcia was required to maintain insurance on the property sufficient to protect the mortgagee's interest in the property. If Garcia failed to provide such insurance, the mortgagee was authorized to purchase insurance for the property but was not required to purchase insurance which protected Garcia's interest in the property, *i.e.*, any value in the property beyond the amount owed on the loan. Under the escrow agreement contained within the loan documents, Garcia was to pay an amount for insurance premiums into an escrow account, and the mortgagee was to use those funds to pay for either the insurance provided by Garcia, or in the event he failed to provide such insurance, for insurance placed by the mortgagee.

In 2004, Countrywide Home Loans acquired Garcia's mortgage. At the time, Garcia had a homeowner's insurance policy with National Lloyds Insurance. When Garcia failed to renew this policy, Countrywide purchased a "lender-placed" policy from Newport Insurance.[1] This new policy listed Countrywide as the only insured party. According to appellees, the new policy was procured because Garcia failed to maintain coverage on the property as required under the mortgage agreement. According to Garcia, appellees should have either used escrow funds to pay premiums to renew the insurance with National Lloyds or obtained other insurance that covered his interests as well as those of Countrywide. Garcia also alleges that he is an intended third-party beneficiary of the Newport policy.

---

[1] Newport is sometimes referred to both in the briefs and in documents filed below as "Balboa Insurance." It is not completely clear why different names are used, but at one point in his pleadings, Garcia suggested that Balboa owns Newport. No issues turn on the distinction. Within this opinion, we will use the name "Newport" to encompass assertions made regarding both Newport and Balboa.

When Hurricane Ike hit Texas in September 2008, Garcia's house sustained significant damage. Garcia subsequently sued Newport, alleging that while it paid him some money to repair the damage to his house, it failed to adequately compensate him as required under the insurance policy.[2] Garcia later amended his pleadings to add Countrywide, BOA (which had purchased Countrywide), and BAC (the mortgage servicing arm of BOA) as defendants. Countrywide later was dismissed from the lawsuit. Against BOA and BAC, which Garcia refers to as the "Bank Defendants," he alleged that they improperly switched the insurance paid with the escrow funds to the lender-placed policy with Newport. The Newport policy was designed to solely or primarily protect the interests of the lender rather than the homeowner, as would have been the case under the National Lloyds policy.[3]

After the case was removed to federal court and then returned to state court, the state trial court granted summary judgment favoring all three defendants without specifying the grounds therefor. In its motion, Newport alleged that Garcia could not sue under the insurance policy because he was neither a named insured nor a third-party beneficiary. In its motion, BOA contended that it had no role in the ownership or servicing of Garcia's mortgage. Lastly, in its motion, BAC attempted to conclusively disprove at least one element of each of Garcia's claims against it.

## II. Standards of Review

In proceedings on a traditional motion for summary judgment, the movant has the burden to show that there is no genuine issue of material fact and he or she is entitled to judgment as a matter of law. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). If the movant satisfies this requirement, the

---

[2] Garcia's causes of action against Newport included: breach of contract, violations of the Insurance Code and Deceptive Trade Practices Act (DTPA), and breach of the duty of good faith and fair dealing.

[3] The specific claims against BOA and BAC included: breach of the duty of good faith and fair dealing, breach of fiduciary duty, negligence, breach of contract, DTPA violations, Insurance Code violations, common law and statutory fraud, negligent misrepresentation, and conspiracy to commit fraud and breach of fiduciary duty.

3

burden shifts to the non-movant to raise a fact issue sufficient to defeat summary judgment. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

In determining whether a fact issue exists precluding summary judgment, evidence favorable to the non-movant is taken as true, and all reasonable inferences are carried in the non-movant's favor. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We review a trial court's grant of summary judgment de novo. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009). We must affirm a summary judgment if any ground in the motion that would support the judgment is meritorious. *Progressive Cty. Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 806 (Tex. 2009).

Resolution of the issues in this appeal involve interpretation of contract and insurance policy language. The interpretation or construction of an unambiguous contract is a matter of law to be determined by the court. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). When interpreting a contract, our primary concern is to ascertain and give effect to the intent of the parties as expressed in the agreement. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). To discern this intent, we examine and consider the entire writing in an effort to harmonize and give effect to all of its provisions so that none will be rendered meaningless. *Id.* No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Id.* Interpretation of an insurance policy is governed by the same rules of construction applicable to other contracts. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

### III. Newport's Motion

As stated, Newport's motion was based solely on its assertion that Garcia was neither a named-insured nor an intended third-party beneficiary of the lender-placed insurance policy. In his response below and on appeal, Garcia has focused on the third-party beneficiary argument.

4

## A.  Third-Party Beneficiary Law

A third party may recover on a contract made between other parties only if the parties intended to secure some benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit.  *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002).  The mere fact that a person might receive an incidental benefit from a contract does not give that person a right of action to enforce the contract.  *Id.*  In determining whether a third party can enforce a contract, the intention of the contracting parties is controlling.  *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007).  The intention to confer a direct benefit to a third party must be clearly and fully spelled out, or enforcement by the third party must be denied.  *Id.*  Courts may not create third-party beneficiary contracts by implication.  *Stine*, 80 S.W.3d at 589.  There is a presumption in Texas against third-party beneficiary agreements.  *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011).

Texas recognizes two forms of third-party beneficiary: creditor and donee.  Garcia contends only that he was a creditor beneficiary.  A party is a creditor beneficiary if no intent to make a gift appears from the contract (which would make the party a donee beneficiary), but performance will satisfy an actual or asserted duty of the promisee to the beneficiary.  *Lomas*, 223 S.W.3d at 306; *Esquivel v. Murray Guard, Inc.*, 992 S.W.2d 536, 543 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).[4]  This duty may be an indebtedness, contractual obligation, or other legally enforceable commitment to the third party.  *Esquivel*, 992 S.W.2d at 544.  The promisee must intend that the beneficiary will have the right to enforce the contract.  *Id.*

## B.  Arguments and Analysis

Newport relied on the insurance policy itself, as well as other documents, to demonstrate that the parties to the policy, Newport and Countrywide, did not intend to

---

[4] Garcia does not argue in the alternative that he was a donee beneficiary.  Such would require a clear intention to provide a gift to the beneficiary and would be rare in a business relationship.  *Esquivel*, 992 S.W.2d at 543.

provide any direct benefit to Garcia but merely contracted to protect Countrywide's secured interest in the property. Garcia is not listed as a primary or additional insured in the policy. Although he is listed in the policy as the owner of the property, mere identification by itself does not suggest that he was an intended third-party beneficiary. *See Union Pacific R.R. Co. v. Novus Intern., Inc.*, 113 S.W.3d 418, 422 n.1 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (explaining that identification of a party in a contract is not determinative of third-party beneficiary status).

Garcia bases his contention that he was a creditor beneficiary primarily on language in the policy (found in endorsement 001), indicating that in the event the covered amount of a covered loss exceeded the value of Countrywide's interest in the property, payment for the loss would be made to Countrywide *and* Garcia.[5] Garcia argues that this language clearly indicates an intention to secure a benefit for him and thus he could sue to enforce the policy provisions. The very same one-page endorsement, however, contains language at the bottom explaining that "Notwithstanding the foregoing, nothing contained in this endorsement shall make a Mortgagor in legal possession of the Insured Residential Property or Commercial Property an Insured or an additional insured under this Policy." This language indicates that contrary to Garcia's suggestion, there was no intent in endorsement 001 to provide a benefit to Garcia that he would have the right to enforce; in other words, any benefit provided was incidental. *Cf. MCI Telecomms. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999) (holding that although contract in question provided certain benefits to third party, third party was not an intended third party beneficiary where no contractual language indicated parties

---

[5] The provision in question reads in full as follows:

Loss or damage, if any, shall be adjusted with and made payable to YOU. In the event that the covered amount of a covered loss exceeds Your interest in the covered property and a mortgagor is in legal possession of the Insured Residential Property or Commercial Property at the time of payment for loss or damage payment, [sic] will be made to You and the mortgagor.

The policy explained that the terms "you" and "your" were used therein to refer to the named insured, in this case, Countrywide.

6

entered contract directly to benefit third party and provision indicated contract should not be interpreted as conferring any benefits on third party).[6]

Furthermore, Garcia fails to point out what duty Countrywide allegedly owed to him that benefits under the insurance policy would have satisfied. The policy does not demonstrate that any benefits thereunder were to satisfy any duty Countrywide owed to Garcia.[7] Unless Countrywide owed Garcia a duty that the promise to pay insurance proceeds could satisfy, Garcia could not be a creditor beneficiary but was instead an incidental beneficiary with no right to enforce the contract. *See, e.g., MCI Telecomms.*, 995 S.W.2d at 651.

The trial court properly granted summary judgment favoring Newport because Newport established as a matter of law that Garcia was neither an insured nor an intended third-party beneficiary under the policy.[8] Accordingly, we overrule Garcia's first issue.

---

[6] Garcia further notes that the same endorsement also authorized him to notify Newport of damage to the insured property. Such permission, however, does not connote a clear intention to confer a direct benefit to Garcia. *See Lomas*, 223 S.W.3d at 306. Furthermore, the admonishment in the endorsement that nothing therein should be construed as making a mortgagor an insured or additional insured under the policy also applied to this provision. Moreover, under the mortgage agreement between Garcia and Countrywide, Garcia was obligated to promptly report any damage to the property to the insurer. In other words, this was a duty owed by Garcia, not a benefit he was to receive.

Garcia additionally cites a provision in the policy providing that "No one" could bring legal action on the policy unless there had been full compliance with the policy and the action was brought within two years of the damage in question. Garcia suggests that the fact that this provision did not limit itself to the named insured suggests the parties envisioned others might be able to bring suit to enforce the policy as well. However, that this single provision uses somewhat indistinct language does not "clearly and fully spell[] out" that the parties to the policy intended to confer a direct benefit on Garcia under the policy. *See Lomas*, 223 S.W.3d at 306.

[7] Additionally, the mortgage agreement between Countrywide and Garcia provided that in the event Countrywide were to procure lender-placed insurance, it would not be obligated to purchase insurance that also protected Garcia's interest.

That the premiums for the lender-placed policy were derived from funds provided by Garcia is no evidence of an intent by Countrywide and Newport to insure Garcia's interest. Garcia was obligated under the mortgage agreement to pay for insurance; Countrywide was not obligated to procure insurance that protected Garcia's interest.

[8] In support of his position that borrowers can be third-party beneficiaries of lender-placed policies, Garcia cites numerous cases from other jurisdictions, principally federal district courts in Louisiana, Alabama, and Mississippi. This authority is not binding on this court, but in any event, each of these cases is readily distinguishable. *See, e.g., Lee v. Safeco Ins. Co. of Am.*, No. 08-1100, 2008 WL 2622997, at *3-5 (E.D. La. Jul. 2, 2008) ) (applying Louisiana law, which is substantially dissimilar regarding third party beneficiaries, and

## IV. Bank of America's Motion

In his second issue, Garcia contends the trial court erred in granting summary judgment favoring BOA. In its motion, the sole ground BOA asserted for summary judgment was that it simply played no role in the ownership or servicing of Garcia's mortgage. In support, it attached an affidavit from one of its vice presidents, Devra Lindgren, who averred as follows:

> My name is Devra Lindgren. I am a Vice President/Assistant Corporate Secretary with Bank of America Corporation. In that position I am familiar with the relationship between Countrywide Home Loans, Inc. and Bank of America Corporation. Bank of America Corporation did not assume ownership of any of the loans issued by Countrywide Home Loans, Inc. to borrowers at time of the purchase of Countrywide Home Loans, Inc. by Bank of America Corporation. Bank of America Corporation has never been involved in the servicing of any of the mortgage loans issued to borrowers by Countrywide Home Loans, Inc.
>
> As a result, Bank of America Corporation would not have had any involvement in either the ownership or servicing of the mortgage loan issued to Milton P. Garcia, Jr. by Countrywide Home Loans, Inc.

A summary judgment may be based on uncontroverted testimonial evidence of an interested witness "if the evidence is clear, positive and direct, otherwise credible and

---

involving substantially dissimilar policy language); *Jones v. Gen. Ins. Co. of Am.*, No. 07-0855-WS-C, 2009 WL 1537866, at *8-10 (S.D. Ala. May 29, 2009) (emphasizing a course of dealing between the parties and that performance under the contract satisfied a duty by the promissee to the borrower); *Turner v. Gen. Ins. Co. of Am.*, No. 5:09cv00057-DCB-JMR, 2009 WL 3247302, at *2-4 (S.D. Miss. Oct. 7, 2009) (involving policy which covered personal property of homeowner and required payment directly to homeowner and not discussing requirement that performance be in satisfaction of a duty the promisee owed the borrower).

In contrast to the cases Garcia cites, the policy in the present case required payment of any amount above the value of the lender's interest be paid to both the lender and the borrower, did not specifically require compliance with policy terms by the borrower, did not cover the borrower's personal property, and included language stating that any amounts paid above the value of the lender's interest in the property would not make the borrower an insured or additional insured under the policy. Furthermore, Garcia presented no evidence of a course of dealing that evidenced the parties' intent to confer a direct benefit on him.

We additionally note that a divided panel of the First Court of Appeals recently held that an insurer under a lender-placed policy failed to prove entitlement to summary judgment against a homeowner's claim to be an intended third-party beneficiary of the policy. *Alvarado v. Lexington Ins. Co.*, Nos. 01-10-00740-CV, 01-10-01150-CV, 2012 WL 1355733, at *17 (Tex. App.—Houston [1st Dist.] Apr. 19, 2012, no pet. h.). Some of the policy language at issue in that case, however, is not contained in the policy before us in the present case. *See id.* at *12-16.

free from contradictions and inconsistencies, and could have been readily controverted." Tex. R. Civ. P. 166a(c); *see also Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997). When an affidavit meets these criteria and the opposing party fails to controvert the affidavit through deposition testimony, interrogatories, or other discovery, the affidavit is competent summary judgment evidence. *See Trico Techs.*, 949 S.W.2d at 310.

Garcia's appellate briefing regarding BOA is entirely a critique of Lindgren's affidavit. Garcia's most salient points are that Lindgren (1) speaks only regarding loans "issued" by Countrywide, while his loan was acquired by Countrywide after issuance by another lender; (2) only negated an ownership interest at the time BOA purchased Countrywide, not subsequent ownership or involvement; (3) did not negate any supervision or control by BOA over Countrywide; (4) states BOA "would not have had" involvement but does not say it "did not have" involvement; and (5) did not affirmatively establish personal knowledge or the truth or correctness of her testimony. Additionally, Garcia questions how a different BOA officer, Stephen Grzeskowiak, could have expressed considerable knowledge regarding Garcia's loan when Lindgren denied BOA had any involvement with the loan. We will consider each of these arguments in turn.

First, Garcia points out that Lindgren states BOA had no involvement with any loans "issued" by Countrywide, but Countrywide did not *issue* Garcia's loan, it *acquired* it from another lender. While this distinction may be accurate, it is a semantic point at best. *Cf. Martinez v. City of San Antonio*, 768 S.W.2d 911, 915 (Tex. App.—San Antonio 1989, no writ) (refusing to participate in "a semantical word game" while interpreting affidavit). The fact that Lindgren intended the term "issued" to be used in an expansive way is demonstrated by the fact that she concludes from BOA's lack of involvement in loans "issued" by Countrywide that BOA would not have had any involvement with Garcia's loan in particular. Furthermore, if Lindgren's statement was inaccurate, Garcia could have controverted it through the discovery and summary judgment response processes. *See Trico Techs.*, 949 S.W.2d at 310. He did not do so.

9

Next, Garcia asserts that Lindgren only negated an ownership interest *at the time BOA purchased Countrywide*, not any subsequent ownership or involvement with Garcia's loan. However, Lindgren's statements in the affidavit are not as limited as Garcia suggests. Lindgren stated that BOA "has never been involved in the servicing of any of the mortgage loans" and "would not have had any involvement in either the ownership or servicing of" Garcia's loan. This language was comprehensive enough to negate any interest at the time of purchase or subsequent thereto.

Garcia further points out that Lindgren did not specifically negate the possibility that BOA exerted supervision or control over Countrywide in regard to Garcia's loan. However, as appellees point out, Garcia's live pleading at the time judgment was granted did not contain any allegations of supervision or control. A summary judgment movant is not required to negate all potential bases for liability, only those actually pleaded. *See Smithkline Beecham Corp. v. Doe*, 903 S.W.2d 347, 355 (Tex. 1995). Furthermore, even if such theories had been pleaded, Lindgren's affidavit statements were sufficient to negate such involvement. Lindren effectively denied any involvement by BOA in regards to Garcia's loan.

Garcia additionally argues Lindgren did not affirmatively establish personal knowledge of the matters she referenced in her affidavit. Lindgren, however, permissibly explained that her knowledge came via her position as vice president and assistant corporate secretary with BOA. *See Valenzuela v. State & County Mut. Fire Ins. Co.*, 317 S.W.3d 550, 553 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (compiling cases addressing similar statements in affidavits).[9]

Next, Garcia points out that in her affidavit Lindgren stated that BOA "would not have had any" involvement with his loan and did not specifically say that BOA "did not

---

[9] To the extent Garcia urges that Lindgren's affidavit cannot support summary judgment because in it she did not expressly say that her statements are based on her "personal knowledge" or that the facts recounted are "true and correct," such argument raises a matter of form that Garcia waived by not making it in the trial court. *See, e.g., New AAA Apartment Plumbers, Inc. v. DPMC-Briarcliff, L.P.*, No. 14-05-00485-CV, 2006 WL 2827275, *2 (Tex. App.—Houston [14th Dist.] Oct. 5, 2006, no pet.).

have any" involvement.  But these phrases are substantial equivalents.  Moreover, this is again an overly restrictive reading of the affidavit.  Lindgren stated BOA "did not assume ownership" and "has never been involved in the servicing" of Countrywide's loans, thus it "would not have had any involvement" with Garcia's specific loan.  In context, the "would not have had any" language does not suggest Lindgren was attempting to hide behind semantics as Garcia suggests.

Lastly, Garcia questions how another BOA officer, Senior Vice President Stephen Grzeskowiak, could have expressed considerable knowledge regarding Garcia's loan in his affidavit when Lindgren denied BOA had any involvement with the loan in hers.  As appellees point out, however, Grzeskowiak's affidavit was not based on his experience with Garcia's loan while at BOA.  Grzeskowiak stated in his affidavit that his knowledge of lender-placed insurance policies in general and Garcia's situation in particular was based upon (1) previous employment "where [his] responsibilities included lender placed policies," and (2) a review of Garcia's "loan file."  Contrary to Garcia's suggestion, there is no apparent discrepancy between Lindgren's and Grzeskowiak's affidavits.

We find all of Garcia's challenges to Lindgren's affidavit to be without merit.  Because Garcia does not raise any other arguments attacking the grant of summary judgment favoring BOA, we conclude the trial court did not err in granting that judgment.  Garcia's second issue is overruled.

### V.  BAC Home Loan Servicing's Motion

Garcia's third issue challenges the summary judgment favoring BAC.  BAC is the mortgage servicing arm of BOA.  BAC and BOA filed a joint motion for summary judgment, making separate arguments for each entity.  In contrast to the portion of the motion concerning BOA, in which BOA denied any connection to Garcia's mortgage, BAC acknowledges involvement in the servicing of Garcia's mortgage.  BAC primarily argues instead that it properly performed any obligations it had to Garcia and did not breach any duties it may have owed him.  Although the motion does not specify whether it was a traditional motion or a no-evidence motion, the specific arguments made are of

11

the traditional variety. *See* Tex. R. Civ. P. 166a(c). Thus, the initial burden was on BAC to demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See M.D. Anderson*, 28 S.W.3d at 23.

Garcia's extensive claims against BAC included the following: (1) breach of the duty of good faith and fair dealing; (2) breach of fiduciary duty; (3) negligence; (4) breach of contract; (5) violations of the Deceptive Trade Practices Act (DTPA); (6) common law fraud; (7) statutory fraud; (8) violations of the Texas Insurance Code; (9) negligent misrepresentation; and (10) conspiracy to commit fraud and breach of fiduciary duty.[10] In its motion, BAC addressed each of Garcia's causes of action. BAC also attached Grzeskowiak's affidavit to the motion, in which he stated that he had reviewed Garcia's loan file, "was previously employed in a position where [his] responsibilities included lender placed policies," and had personal knowledge of the facts presented. Grzeskowiak further averred that Countrywide acquired Garcia's mortgage in 2004, Garcia was consistently in default on the loan, and Countrywide had worked with him to get the payments current. At the time Countrywide acquired the loan, Garcia had his own insurance policy with National Lloyds Insurance, but that policy came up for renewal in September 2004 and was not renewed by Garcia.[11] According to Grzeskowiak, because Garcia did not fulfill his obligation under the mortgage agreement to maintain insurance on the subject property, a lender-placed policy was purchased and multiple notices were sent to Garcia before and after placement of the policy.[12] The "loan file" Grzeskowiak relied upon in making his affidavit was not attached as such to the affidavit; however, included as attachments to the affidavit were copies of various notices Grzeskowiak said

---

[10] Garcia's petition actually addressed each of the causes of action discussed in this section against three entities (BOA, BAC, and Countrywide) that he called "the Bank Defendants." However, in this section, we will examine each cause of action only as it pertained to BAC.

[11] Grzeskowiak stated that Countrywide contacted Garcia's agent when a renewal of the policy was not submitted, but the agent was unable to produce a renewal policy.

[12] Grzeskowiak did not specify who procured the lender-placed policy, sent notices to Garcia, or later renewed the lender-placed policy. Countrywide was the named insured on the policy, and the return address on the notices is for Countrywide.

12

had been sent to Garcia, as well as a copy of the master insurance policy that was issued to Countrywide (*i.e.*, the lender-placed policy).

We will discuss each cause of action raised by Garcia; however, as will be seen, several of the claims can be analyzed together because the grounds on which summary judgment was granted against them are similar.[13]

## A. Breach of Duty of Good Faith and Fair Dealing Claims

Under his cause of action alleging a breach of the duty of good faith and fair dealing, Garcia asserted that BAC created a "special relationship" when it procured the lender-placed insurance policy on Garcia's property with funds he placed in escrow. Garcia acknowledges that a duty of good faith does not ordinarily arise between parties to a mortgage agreement, *see Federal Deposit Insurance Corp. v. Coleman*, 795 S.W.2d 706, 709 (Tex. 1990); however, he insists that such a duty arose here when BAC procured the lender-placed policy. *See generally Hudspeth v. Enter. Life Ins. Co.*, 358 S.W.3d 373, 389-90 (Tex. App.—Houston [1st Dist.] 2011, no pet. h.) (discussing creation of a special relationship and duty of good faith and fair dealing in the insurance context). According to Garcia, because of this special relationship, BAC had a duty to insure that all of the benefits under the policy were paid to him, and BAC violated that duty by not making sure he received the proceeds.

In its motion, BAC explained, *inter alia*, that as authorized by the mortgage agreement, the lender-placed policy was procured solely for the mortgage company and solely to protect the secured interest of the mortgage company, and Garcia was not entitled to any proceeds from the policy under the terms of the mortgage agreement or the policy itself. Therefore, according to BAC, procurement of the policy did not create any

---

[13] Garcia spent a considerable portion of his brief arguing that BAC's motion was too conclusory to support the judgment and failed to provide sufficient citation to authority and the summary judgment evidence. While not a model of exposition, we find BAC's motion sufficient. It provided proper citation to legal authority in key places and referenced particular key documents in the record. Moreover, as will be discussed in detail below, a number of Garcia's causes of action were based on very similar allegations that could properly be addressed through shorthand references to arguments already made in the motion.

special relationship between BAC and Garcia and there was no breach of a duty for good faith and fair dealing in such a relationship by not insuring that Garcia received proceeds from the policy.

We agree with BAC. As described in detail above, the lender-placed policy was procured pursuant to the mortgage agreement, which permitted such a policy to be obtained under certain circumstances and specified that the policy would not necessarily cover Garcia's interest in the property. Furthermore, the policy itself did not provide any direct benefit to Garcia for which he was entitled to sue. Consequently, BAC did not sell Garcia insurance or purchase insurance for him, and BAC's procurement of the policy did not create any duty for it to ensure that Garcia received proceeds under the policy. *See Hudspeth*, 358 S.W.3d at 389-90; *see also Barrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122, 139 (Tex. App.—Corpus Christi 2006, pet. denied) (holding that regardless of whether a duty of good faith and fair dealing arose under parties' agreement, party was not obligated by that duty to perform acts counter to agreement provisions). Moreover, since no such duty existed, no such duty was subsequently breached. Accordingly, the trial court did not err by granting summary judgment favoring BAC on Garcia's claim of breach of the duty of good faith and fair dealing.

## B. Breach of Fiduciary Duty Claim

In his breach of fiduciary duty cause of action, Garcia alleged that a fiduciary duty existed because BAC was (1) "the agent to insure that [Garcia] received all benefits he was entitled to under the policy" and (2) the escrow agent for the insurance premium payments. Garcia asserted BAC breached these alleged fiduciary duties by failing to ensure Garcia received all payments due him under the policy, failing to procure non-lender-placed insurance on the property, and failing to timely and properly pay insurance premiums from the escrow account for renewal of the National Lloyds policy.

Relying primarily on the mortgage documents and the escrow agreement, BAC asserted that it owed no fiduciary duties to Garcia and breached no such duties. As discussed in the immediately prior section of this opinion, BAC had no duty (agency–

14

based or otherwise) to insure Garcia received any benefits under the lender-placed policy, so no fiduciary duty could be based on such an alleged duty or agency relationship. Thus, the first basis Garcia provided for creation of a fiduciary duty is without merit.

BAC has not expressly denied that it was the escrow agent for Garcia's insurance premiums. Cases in which courts have described escrow agents as owing fiduciary duties to both parties to an escrow agreement have considered the issue in the context of *closings* on real property wherein the agent has a fiduciary duty to both sides in the transaction. *See Shoalmire v. U.S. Title of Harrison County*, No. 06-09-00034-CV, 2010 WL 271302, at *5 (Tex. App.—Texarkana 2010, no pet.) (mem. op.).; *Gary E. Patterson & Assocs., P.C. v. Holub*, 264 S.W.3d 180, 203 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *Trahan v. Lone State Title Co. of El Paso, Inc.*, 247 S.W.3d 269, 286 (Tex. App.—El Paso 2007, pet. denied). Other cases have explained that when the escrow agreement simply provides for the payment of funds by the mortgagor into an account for the mortgagee's use to meet tax, insurance, and other obligations—as appears to be the case here—no fiduciary relationship is created. *See Monumental Life Ins. Co. v. Hayes-Jenkins*, 403F.3d 304, 318-10 & n.27 (5th Cir. 2005); *White v. Mellon Mortg. Co.*, 995 S.W.2d 795, 801 (Tex. App.—Tyler 1999, no pet.) (citing *Wesson v. Jefferson Sav. & Loan Ass'n*, 641 S.W.2d 903, 905 n.2 (Tex. 1982)).[14]

Regardless of whether an escrow agent owes a fiduciary duty, the duties of the agent are limited and defined by the escrow agreement itself. *See Shoalmire*, 2010 WL 271302, at *5; *Trahan*, 247 S.W.3d at 286; *White*, 995 S.W.2d at 801. The escrow agreement in the present case did not require BAC to insure that Garcia received all payments due him under any insurance policy or to procure any insurance policy for Garcia; to the contrary, the burden of procuring insurance under the mortgage documents

---

[14] Garcia asserts in his brief that the supreme court in *Wesson* suggested that a fiduciary relationship would be created if an escrow agreement required the mortgagee to pay insurance premiums from escrow funds. 641 S.W.2d at 905 n.2. This is not a reasonable reading of *Wesson*. The court therein stated: "The escrow relationship does not in itself impose a duty to acquire insurance in the absence of an agreement to do so." *Id*. As fully discussed in this opinion, the mortgage agreement at issue in this case did not require any of appellees to acquire insurance protecting Garcia's interest in the property.

was on Garcia. Therefore, summary judgment was properly granted against claims based on these alleged fiduciary duty breaches.

As stated, Garcia additionally asserted that BAC failed to timely and properly pay the insurance premiums from funds in the escrow account. The escrow agreement did, in fact, require timely payments be made for insurance premiums. Garcia's specific claim, as explained in his briefing to this court, is that BAC failed to send the premiums to Garcia's former insurance carrier, National Lloyds, "to renew the policy." But nothing in the mortgage documents, including the escrow agreement, placed a duty on BAC to renew a policy originally procured by Garcia. To the contrary, the duty to provide and maintain insurance for the property was squarely on Garcia.[15] Accordingly, the trial court properly granted summary judgment against Garcia's breach of fiduciary duty claims.

### C. Failure to Pay Premiums

Similar to the last claim discussed under fiduciary duty above, several of Garcia's other causes of action were also premised on allegations that BAC either failed to pay premiums to renew the policy and was obligated to do so or misrepresented that it would make such payments. Garcia alleged: breach of contract,[16] common law fraud,[17] statutory fraud,[18] negligence,[19] negligent misrepresentation,[20] DTPA violations,[21] and violations under chapter 541 of the Insurance Code.[22]

---

[15] Paragraph 5 of the agreement states that Garcia "shall keep the improvements now existing or hereafter erected on the Property insured against loss," and "[t]his insurance shall be maintained . . . ."

[16] In his breach of contract cause of action, Garcia asserts that BAC had a duty under the escrow agreement to pay the insurance premiums and failure to do so was a breach of contract.

[17] Under his common law fraud cause of action, Garcia alleged that BAC represented it would perform under the escrow agreement and pay the insurance premiums timely, and such representation was material, false, and made with the intent for Garcia to rely on it.

[18] In his statutory fraud cause of action, Garcia alleged that BAC violated section 27.01 of the Texas Business and Commerce Code by making a false representation that it would perform under the escrow agreement. Tex. Bus. & Comm. Code § 27.01.

[19] In his claim for negligence, Garcia alleged that as escrow agent, BAC had a duty to timely pay insurance premiums out of the escrow account and failing to do so caused him damages.

The mortgage agreement makes clear that BAC had no duty to renew the National Lloyds policy; the duty to provide and maintain insurance under the agreement was always on Garcia. Grzeskowiak explained in his affidavit that because Garcia did not fulfill his obligation to maintain insurance, a lender-placed policy was obtained to protect the mortgagee's interest in the property. Grzeskowiak further identified numerous notices sent to Garcia apprising him of the issue both before and after placement of the policy.

In his responsive affidavit, Garcia asserted that "I was under the impression that I had full insurance coverage and that every month when I made my mortgage payment, I paying [sic] toward an insurance premium for a policy that my bank was purchasing on my behalf." He further stated that Countrywide never instructed him that he needed to get his own insurance policy, and it was his belief that "he paid money into an escrow account every month and Countrywide chose the insurance policy which was the [Newport] policy." Additionally, he averred that "It is not true that I allowed an insurance policy to lapse and therefore the mortgage company procured a force placed policy on my residence."

At no point in his affidavit, however, did Garcia allege that any representations were made by BAC regarding payment of the insurance premiums. Garcia's beliefs and impressions, in light of the unambiguous terms of the mortgage agreement placing the burden on him to provide and maintain insurance, are of no legal significance. This case is therefore unlike the situation addressed by the Amarillo Court of Appeals in *Pankow v.*

---

[20] Under his negligent representation cause of action, Garcia alleged that BAC supplied false information for his guidance in that it represented it would timely pay premiums and thereby caused him damages.

[21] In regards to his DTPA claims, for which he did not cite specific sections of the act, Garcia alleged that he was a consumer of BAC's escrow agent services. He further asserted that BAC made representations about those services in order to induce Garcia into using those services, and he was subsequently damaged by BAC's failure to pay the insurance premiums in accordance with the escrow agreement.

[22] Lastly, in his Insurance Code claims under chapter 541, Garcia alleged that BAC violated sections 541.051, .052, and .061 in making misrepresentations regarding timely payment of insurance premiums, thus inducing Garcia into allowing a policy to lapse. Tex. Ins. Code §§ 541.051, .052, .061.

17

*Colonial Life Insurance Co. of Texas*, 932 S.W.2d 271, 277-78 (Tex. App.—Amarillo 1996, writ denied). In *Pankow*, the plaintiff sued her mortgage lender and the insurer under a credit life policy that had not been renewed. *Id*. at 273. She was able to defeat summary judgment on certain of her causes of action with evidence that her lender represented that sums from an escrow account would be used to renew the credit life policy but such sums were never transferred as promised. *Id*. at 277-78.

Here, BAC demonstrated it had no duty to under the mortgage agreement to pay premiums to renew the policy and the notices it sent to Garcia contain no such promises. In response, Garcia did not specifically allege any promise was made by BAC to renew the policy. Accordingly, the trial court did not err in granting judgment against claims premised on allegations BAC either failed to pay premiums to renew the policy or misrepresented that it would make such payments.

### D. Negligence

In his claim for negligence, Garcia additionally asserted that BAC owed him a legal duty to insure that he received all of the benefits and payments he was due for damage from Hurricane Ike. In its motion, BAC again asserted, based primarily on the mortgage documents, that it had no legal duty to insure that Garcia received all benefits. As fully discussed above, BAC had no duty to insure Garcia received any benefits. Accordingly, the trial court properly granted judgment on Garcia's negligence claim.

### E. Insurance Code Claim

Garcia further alleged that BAC violated section 556.051 of the Texas Insurance Code by requiring that Garcia purchase insurance from a company affiliated with BAC. Section 556.051 reads as follows:

> **556.051. Unfair Method of Competition or Unfair Practice: Tying**
>
> (a) A depository institution engages in an unfair method of competition or an unfair practice in the sale of insurance by the depository institution if the depository institution:

(1) is an agent and, as a condition of extending or renewing credit, leasing or selling property, or furnishing services, requires the purchase of insurance from the depository institution or a subsidiary or affiliate of the depository institution, or from or through a particular agent, insurer, or any other person or entity;

(2) conditions the terms of credit or the sale or lease of property on acquisition of insurance from or through the depository institution, a subsidiary or affiliate of the depository institution, or any other particular person or entity;

(3) rejects a required policy solely because the policy has been issued or underwritten by a person or entity that is not associated with the depository institution; or

(4) imposes a requirement on an agent or broker who is not associated with the depository institution that is not imposed on an agent or broker who is associated with the depository institution or a subsidiary or affiliate of the depository institution.

(b) This section does not prevent a person who lends money or extends credit from placing insurance on property if the mortgagor, borrower, or purchaser fails to provide required insurance in accordance with the terms of the loan or credit document.

Tex. Ins. Code § 556.051.

As BAC explained in its motion for summary judgment, the record demonstrates that Garcia had the option under the mortgage agreement to provide his own insurance, and a lender-placed policy was obtained, pursuant to the mortgage agreement, only after Garcia failed to renew the prior policy or otherwise provide insurance. Moreover, there is no indication in the record that Garcia was *required* to obtain insurance from a company affiliated with the lender as a condition of extending credit.

BAC additionally relies on subsection 556.051(b), which specifically states that the section should not be read as preventing a lender from placing insurance on a property when the mortgagor fails to provide required insurance. This is precisely the situation in the present case. Nonetheless, Garcia contends that subsection (b) does not authorize a purchase of insurance in such a situation from an affiliated company. However, if Garcia were correct, then it would be difficult to discern what role subsection

(b) played in section 556.051. *See Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 19 (Tex. 2007) (explaining that in interpreting the meaning of a statute, it must be read as a whole and construed in such a manner as to harmonize all of its provisions). We interpret this subsection to mean that a depository institution's placement of insurance on property would not violate prohibitions of subsection (a), without regard to whether the insurance was purchased from an affiliate or subsidiary of the depository institution, after a purchaser's failure to provide required insurance. In short, BAC demonstrated as a matter of law that it did not violate Insurance Code section 556.051. Accordingly, the trial court did not err in granting judgment on this cause of action.

### F. Conspiracy

Lastly, Garcia alleged that BAC conspired with all of the other named defendants to commit fraud and breach of fiduciary duty. Specifically, Garcia complained that the defendants unlawfully required him to purchase insurance coverage from entities "affiliated with a lending institution who [sic] extended credit to" Garcia. As explained above in regard to Garcia's allegations under the Insurance Code, the summary judgment record demonstrates that BAC did not, in fact, *require* Garcia to purchase insurance from an entity affiliated with a lending institution extending credit to Garcia. Therefore, the trial court did not err in granting judgment regarding conspiracy.

### VI. Conclusion

The trial court did not err in granting summary judgment favoring Newport, BOA, or BAC. Consequently, we affirm the trial court's judgment.


/s/    Martha Hill Jamison
        Justice


Panel consists of Justices Frost, Seymore, and Jamison.

20