In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00477-CV
NO. 09-13-00004-CV

_____

**JULIE JOHNSON, Appellant**

**V.**

**BANK OF AMERICA, N.A., Appellee**

**On Appeal from the 172nd District Court**
**Jefferson County, Texas**
**Trial Cause Nos. E-185,420 and E-185,420-A**

**MEMORANDUM OPINION**

In this consolidated appeal, Julie Johnson appeals the trial court's grant of summary judgments favoring Bank of America, N.A. We affirm the trial court's judgments on all causes of action save and except that as to Johnson's breach of contract claim, which we reverse and remand to the trial court for further proceedings consistent with this opinion.

1

## I. Factual and Procedural Background

In August 2006, Johnson purchased a home and financed it by executing a promissory note (the "Note") secured by a deed of trust (the "Deed of Trust"). Bank of America ("BOA") was the owner and holder of the Note, the beneficiary of the Deed of Trust, and the mortgage servicer. Under the terms of the Deed of Trust, Johnson was required to obtain and maintain insurance on the home. To fulfill her obligations under the Deed of Trust, Johnson contacted F.B. Taylor Insurance & Real Estate Agency ("F.B. Taylor") and purchased property insurance, which included windstorm coverage through Texas Windstorm Insurance Association ("TWIA"). Johnson paid the premium to renew her windstorm policy annually. She paid her premium as part of her monthly mortgage payment, which was deposited and maintained by BOA in an escrow account. BOA was required to send payment to the agent, F.B. Taylor, who would then issue separate payment of the annual premium amount to TWIA.

Johnson's windstorm policy was scheduled to expire in September 2008. In order to avoid a disruption in coverage, Johnson had to renew the policy before September 12, 2008. BOA mailed Johnson's renewal premium for her windstorm policy from its office in Irvine, California to F.B. Taylor on September 4, 2008. The check issued by BOA arrived at the F.B. Taylor office on September 10, 2008,

at 5:08 p.m. On the morning of September 11, in anticipation of the landfall of Hurricane Ike, the Jefferson County Judge announced a mandatory evacuation of the county. F.B. Taylor did not mail the premium renewal check on September 11, 2008. The local post office was closed.

Johnson alleges that "[o]n or about September 12, 2008, in the late evening going into the early morning hours of September 13, 2008," Hurricane Ike damaged her home. Sometime after the hurricane, Johnson filed a claim with TWIA for her storm damages. TWIA, however, denied her claim because there was no windstorm insurance coverage in effect for her property at the time the hurricane allegedly damaged her home.

Johnson filed a lawsuit against F.B. Taylor, International Risk Control LLC, Guy Fischer, and BOA.[1] Johnson asserted the following causes of action against BOA: (1) negligence; (2) violation of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"); (3) fraudulent misrepresentation; (4)

---

[1] Johnson reached settlement agreements with F.B. Taylor, International Risk Control LLC, and Guy Fischer and filed notices of nonsuit with prejudice as to these defendants.

negligent misrepresentation; (5) breach of contract; (6) breach of fiduciary duty; (7) fraud; and (8) conspiracy to commit fraud. [2]

On May 3, 2012, BOA filed a traditional and no-evidence motion for summary judgment. In support of its motion, BOA attached copies of the Note and Deed of Trust. BOA also attached excerpts from the depositions of Johnson, George Taylor, and Stephen Grzeskowiak.

Johnson responded to BOA's motion for summary judgment on May 23, 2012. In support of her response, Johnson submitted excerpts from her deposition, excerpts from the depositions of George Taylor and Stephen Grzeskowiak, a sworn affidavit and report from Terry Shipman, and a sworn affidavit and report from Walter Carter.

---

[2] We note that Johnson did not file her Third Amended Petition until May 23, 2012, after the deadline indicated on the docket control order. Johnson filed a motion for leave to file her Third Amended Petition on July 9, 2012. The record does not reflect whether leave of court was granted; however, the trial court granted summary judgment in favor of BOA on Johnson's fiduciary duty cause of action, which Johnson added in the Third Amended Petition. The parties have not raised any error on appeal concerning the late amended petition. Because it appears from the record that the trial court considered the amended pleading, we presume that Johnson filed her amended pleading with leave of court. *See Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988) ("Texas courts have held that in the absence of a sufficient showing of surprise by the opposing party, the failure to obtain leave of court when filing a late pleading may be cured by the trial court's action in considering the amended pleading.").

After holding a hearing on BOA's motion, the trial court granted an interlocutory summary judgment as to all of Johnson's claims. However, after BOA filed its motion for summary judgment and before the hearing on such motion, Johnson amended her petition to include a claim for breach of fiduciary duty, which BOA's first motion for summary judgment did not address. As such, Johnson filed a motion to set aside the summary judgment as to her breach of fiduciary duty claim. The record does not reflect whether the trial court granted Johnson's motion. However, on August 15, 2012, BOA filed a no-evidence and traditional motion for summary judgment as to Johnson's breach of fiduciary duty claim. As evidence supporting her response, Johnson attached her sworn affidavit. After granting BOA's motion to strike Johnson's affidavit, the trial court also granted BOA's motion for summary judgment as to Johnson's breach of fiduciary duty claim. The trial court did not specify the grounds on which it granted either summary judgment.

Johnson timely appealed each of the trial court's judgments. We consolidated the appeals. In her appellate brief, Johnson raises fourteen issues for our consideration. In her first issue, Johnson complains that the trial court erred in granting summary judgment in favor of BOA. However, in her argument of this issue, Johnson just states the legal standards governing review of summary

judgments. We therefore overrule Johnson's first issue. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.") In her second, third, and fourth issues, Johnson essentially challenges whether BOA conclusively established that it did not breach the Deed of Trust or, alternatively, that any breach did not cause Johnson's injuries. In her fifth issue, Johnson contests whether BOA conclusively established that the economic loss rule bars all of her non-contractual claims. In her sixth issue, Johnson challenges whether BOA conclusively established its limitations defense. Because BOA did not reassert its limitations defense on appeal as a basis for summary judgment, we need not address Johnson's sixth issue. In her seventh issue, Johnson challenges whether BOA conclusively established that Johnson is not a consumer under the DTPA. In her eighth, ninth, tenth, eleventh, twelfth, thirteenth, and fourteenth issues, respectively, Johnson challenges whether BOA raised a fact issue as to her breach of contract, negligence, negligent misrepresentation, DTPA, fraud, conspiracy, and breach of fiduciary duty claims. We note that with regard to the thirteenth issue challenging the trial court summary judgment on her conspiracy claim, Johnson makes no substantive argument in her brief regarding her framed issue. We therefore overrule Johnson's thirteenth issue. *See* Tex. R. App. P. 38.1(i)

6

## II. Standards of Review

We review a trial court's grant of summary judgment de novo. *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012). If the trial court does not specify the grounds for its summary judgment, as is the case here, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *See State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S. Currency*, 390 S.W.3d 289, 292 (Tex. 2013); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

A no-evidence motion for summary judgment under Rule 166a(i) must challenge at least one specific element of the opponent's claim or defense on which the opponent will have the burden of proof at trial. Tex. R. Civ. P. 166a(i). The opponent must then present summary judgment evidence raising a genuine issue of material fact to support the challenged elements. *Id*. "The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact[]" on the challenged elements. *Id*. A genuine issue of material fact exists if the nonmovant produces more than a scintilla of evidence establishing the existence of the challenged element. *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004).

To prevail on a traditional motion for summary judgment, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or must conclusively establish each element of an affirmative defense. Tex. R. Civ. P. 166a(c); *Long Distance Int'l, Inc. v. Telefonos de Mexico, S.A. de C.V.*, 49 S.W.3d 347, 350-51 (Tex. 2001). The defendant bears the burden to prove its entitlement to summary judgment as a matter of law. *Roskey v. Tex. Health Facilities Comm'n*, 639 S.W.2d 302, 303 (Tex. 1982).

In reviewing both a traditional and no-evidence summary judgment, we consider the evidence in the light most favorable to the nonmovant. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985) (traditional); *see also Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009) (no-evidence). We credit evidence favorable to the nonmovant if a reasonable fact-finder could, and we disregard evidence contrary to the nonmovant unless a reasonable fact-finder could not. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

### III. Evidentiary Complaints

As a preliminary matter, we address Johnson's challenges to the evidentiary rulings made by the trial court to determine whether we can appropriately consider certain evidence in analyzing Johnson's substantive contentions. We review the

trial court's evidentiary rulings under an abuse of discretion standard. *In re J.P.B.,* 180 S.W.3d 570, 575 (Tex. 2005). A trial court abuses its discretion when it acts without regard to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985). Unless an erroneous evidentiary ruling probably caused rendition of an improper judgment, we will not overturn the trial court's ruling. *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 906 (Tex. 2000).

BOA made a number of written objections to certain evidence Johnson relied on in opposition to BOA's first motion for summary judgment. However, BOA failed to obtain a ruling on these objections before the trial court entered judgment on this motion. "'Generally, a party is required to obtain an express ruling on its objections to summary judgment evidence.'" *Atl. Shippers of Tex., Inc. v. Jefferson Cnty.*, 363 S.W.3d 276, 284 (Tex. App.—Beaumont, 2012, no pet.) (quoting *Pink v. Goodyear Tire & Rubber Co.*, 324 S.W.3d 290, 300 (Tex. App.—Beaumont 2010, pet. dism'd)). "Evidence that has been objected to remains part of the summary judgment proof unless an order sustaining the objection is reduced to writing, signed, and entered of record." *Mitchell v. Baylor Univ. Med. Ctr.*, 109 S.W.3d 838, 842 (Tex. App.—Dallas 2003, no pet.). Because BOA did

9

not obtain a ruling on its objections to Johnson's summary judgment evidence, BOA waived its objections to the evidence. *See* Tex. R. App. P. 33.1(a).

BOA also made a number of written objections to evidence relied on by Johnson in opposition to BOA's motion for summary judgment as to Johnson's breach of fiduciary duty claim. The trial court expressly sustained those objections. Because we resolve the breach of fiduciary duty issue without reference to the evidence, we need not address Johnson's complaint that the trial court abused its discretion in granting BOA's objections.

## IV. Breach of Contract

Johnson contends that the trial court erred in granting summary judgment on her breach of contract claim against BOA. She argues that she raised a fact issue as to whether BOA breached the Deed of Trust by failing to timely forward funds from her escrow account to F.B. Taylor for the renewal premium of her windstorm policy. After reviewing the summary judgment record in a light most favorable to Johnson, we conclude that Johnson has presented more than a scintilla of evidence that BOA breached its Deed of Trust with Johnson.

### A. Preservation of Error

BOA contends that Johnson's argument that timeliness is a question of fact that depends on whether the disbursement was made within a reasonable time was

not presented to the trial court and thus not preserved for appeal. To preserve a complaint for appellate review, a party must make a timely request, objection, or motion with sufficient specificity to notify the trial court of the complaint and to afford the trial court an opportunity to rule on the objection. Tex. R. App. P. 33.1(a)(1)(A). With the exception of challenging the legal sufficiency of a summary judgment, a "non-movant must expressly present to the trial court, by written answer or response, any issues defeating the movant's entitlement[]" to summary judgment to preserve the right to appeal. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993); *see also City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679 (Tex. 1979) (holding that failure to "expressly present to the trial court those issues that would defeat the movant's right to a summary judgment" waives complaint); *see also* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.").

In response to BOA's motion for summary judgment on the breach of contract claim, Johnson argued,

> [T]here is ample evidence of the fact that [BOA] did not [comply] with its duty under the contract to ensure that adequate payment was issued in order for [Johnson's] policy to be renewed. For example, [BOA]'s corporate representative admitted that the average regular mail transit time is eight (8) days; however, [BOA] sent by regular mail the payment for [Johnson's] renewal of her insurance policy on

11

September 4, 2008, even though [F.B.] Taylor's invoice specifically requested that the check be at [F.B.] Taylor's office by September 7, 2008, and [BOA] was capable of sending the check via overnight mail and in fact had done it previously. A simple math calculation shows that if the average regular mail transit time is eight (8) days, and [BOA] sent [F.B.] Taylor the payment for [Johnson's] policy renewal on September 4, 2008, it is obvious that [Johnson's] policy could not have been renewed. Thus, there is sufficient evidence of the fact that [BOA] did not comply with its duty under the contract by failing to send the payment for [Johnson's] premium of the insurance policy in a timely manner so the policy could be renewed.

Throughout her response, Johnson cited to portions of the summary judgment record to support her argument that BOA did not remit payment in a timely manner for F.B. Taylor to process the payment. Johnson specifically raised the issue to the trial court that BOA did not timely remit the escrow funds under the Deed of Trust. We conclude that Johnson fairly apprised BOA and the trial court of the issue Johnson now contends should defeat BOA's motion—i.e., BOA did not timely perform its obligations under the Deed of Trust. *See Clear Creek*, 589 S.W.2d at 678.

**B. Breach of Contract Cause of Action**

To prevail on a breach of contract claim, a plaintiff must prove (1) the existence of a valid contract; (2) the plaintiff's performance or tender of performance; (3) the defendant's breach; and (4) the plaintiff's damages resulting from the breach. *Bank of Tex. v. VR Elec., Inc.*, 276 S.W.3d 671, 677 (Tex. App.—

12

Houston [1st Dist.] 2008, pet. denied); *Sullivan v. Smith*, 110 S.W.3d 545, 546 (Tex. App.—Beaumont 2003, no pet.). "A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform." *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 769-70 (Tex. App.—Dallas 2005, pet. denied). Neither party contests the validity of the Deed of Trust. There is also no allegation that Johnson failed to perform her obligations under the Note or Deed of Trust. The parties' basic obligations under the Deed of Trust are likewise not in dispute. The real point of contention is whether BOA timely performed its obligation under the Deed of Trust to remit premium funds to F.B. Taylor. To determine if BOA failed to perform its contract obligations timely, we must construe the relevant language in the Deed of Trust.

## C. Rules of Contract Construction

We interpret a deed of trust according to the ordinary rules of contract interpretation. *Fin. Freedom Sr. Funding Corp. v. Horrocks*, 294 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Our primary concern in interpreting a contract is ascertaining the true intent of the parties. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). In so doing, "'we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be

rendered meaningless.'" *Id.* (quoting *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)). To understand the parties' intent we must examine the agreement as a whole in light of the circumstances present at the time when the parties entered into the agreement. *Anglo-Dutch Petrol. Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 450-51 (Tex. 2011). No single provision taken alone should control—instead, we must consider all provisions with reference to the entire agreement. *J.M. Davidson*, 128 S.W.3d at 229. We also consider the particular business activity to be served, and when possible and proper, we avoid a construction that is unreasonable, inequitable, and oppressive. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005). We begin our analysis with the contract's express language. *Italian Cowboy*, 341 S.W.3d at 333.

## D. Relevant Provisions of the Deed of Trust

Under the "Uniform Covenants" of the Deed of Trust, the subparagraph titled "Funds for Escrow Items" provides:

> Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in

14

accordance with the provisions of Section 10. These items are called "Escrow Items."

....

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.

The Deed of Trust defines "RESPA" as "the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter." The Deed of Trust further provides that the use of the acronym "RESPA" in the agreement "refers to all requirements and restrictions that are imposed in regard to a 'federally related mortgage loan' even if the Loan does not qualify as a 'federally related mortgage loan' under RESPA."

## E. Construction of the Deed of Trust

BOA argues that under the Deed of Trust, the parties reached an express agreement on the time for performance. However, as indicated above, the Deed of Trust does not specifically state a date or deadline for BOA's timely remittance of the premium payment. Instead, the Deed of Trust provides that BOA shall remit the funds "no later than the time specified under RESPA." RESPA, in turn,

provides that servicers who collect funds from borrowers for deposit into an escrow account for the purpose of paying taxes, insurance premiums, and other charges "shall" make those payments "in a timely manner as such payments become due." 12 U.S.C. § 2605(g). The statute does not define "in a timely manner[.]" *Id*. The U.S. Consumer Financial Protection Bureau ("CFPB") construes "[t]imely payment" in its regulations interpreting RESPA.[3] 12 C.F.R. § 1024.17(k) (2014). The CFPB provides that timely payment requires the servicer to pay disbursements "in a timely manner, that is, on or before the deadline to avoid a penalty[.]" 12 C.F.R. § 1024.17(k)(1). This regulation clearly implies that there is a direct relation between the timeliness of a payment and whether a penalty can be avoided. *See id.*

BOA contends the Deed of Trust provides that it has timely performed if it delivers the funds to the insurance agent before the deadline renewal date. However, neither the statute nor the regulation supports this interpretation. The

---

[3]Because the alleged breach of contract occurred in 2008, the RESPA provisions and interpreting regulations existing then are applicable to our analysis. However, because there were no material changes in the relevant portions of the applicable statute or regulations, we will cite to their current versions. The CFPB regulations are the current operative regulations interpreting RESPA, and the Department of Housing & Urban Development's regulations (previously found at 24 C.F.R. Part 3500) have been withdrawn pursuant to Title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act. *See* 79 Fed. Reg. 34224 (June 16, 2014).

Deed of Trust requires Johnson to obtain insurance coverage for the property to protect BOA's collateral. The desired outcome of the provision, while not expressly stated, seems obvious—to prevent a lapse in insurance coverage. BOA's interpretation does not further this goal. Rather, under BOA's interpretation, a servicer's performance would be considered "timely" even if the servicer delivered the funds to the agent at such a time that the agent only had minutes to process the check and forward it to TWIA before the policy's expiration. The timeliness of the payment does not depend on when F.B. Taylor—an agent with no authority to bind coverage—receives the payment, but rather, timeliness depends on when TWIA receives payment. We refuse to interpret the Deed of Trust's provision in such a way as to be unreasonable or lead to absurd results. *See Frost Nat'l Bank*, 165 S.W.3d at 312; *see also Avasthi & Assocs., Inc. v. Banik*, 343 S.W.3d 260, 264 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (citing *Lane v. Travelers Indem. Co.*, 391 S.W.2d 399, 402 (Tex. 1965)).

We conclude that the Deed of Trust does not fix a specific time for BOA's performance, and, as such, BOA's disbursement of funds must be reasonable. *See Valencia v. Garza*, 765 S.W.2d 893, 897 (Tex. App.—San Antonio 1989, no writ). "[W]hen a contract is silent regarding the date for an action to be taken, the court[] will construe the contract as requiring such action be taken within a reasonable

17

time." *Hewlett-Packard Co. v. Benchmark Elecs., Inc.*, 142 S.W.3d 554, 563 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). Reasonableness depends on the facts and circumstances as they existed at the time the parties formed the contract. *CherCo Props., Inc. v. Law, Snakard & Gambill, P.C.*, 985 S.W.2d 262, 266 (Tex. App.—Fort Worth 1999, no pet.). Whether a party performed within a reasonable amount of time is usually a question for the trier of fact. *Hewlett-Packard*, 142 S.W.3d at 563; *GNG Gas Sys., Inc. v. Dean*, 921 S.W.2d 421, 429 (Tex. App.—Amarillo 1996, writ denied).

BOA contends that Johnson's repeated admissions that BOA complied with its loan agreement with her conclusively establishes that BOA timely performed under the Deed of Trust. We look at the testimony on which BOA relies in context.[4] BOA's counsel asked Johnson if she believed the following allegation in her pleading was true:

---

[4] In BOA's motion for summary judgment, BOA references other portions of Johnson's deposition transcript and even quotes portions at length. However, we note that several of the referenced transcript pages were not attached in the summary judgment evidence. Pleadings do not constitute summary judgment evidence. *Madeksho v. Abraham, Watkins, Nichols & Friend*, 57 S.W.3d 448, 455 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). Thus, the quotations and corresponding allegations made by BOA in its motion do not constitute summary judgment evidence. *See id.* Even if we did consider the testimony cited in the additional references, it would not change our opinion because the testimony only reiterates Johnson's testimony considered and described in this opinion.

18

> Alternatively, BOA failed to make monies available in a timely fashion so that F.B. Taylor could purchase a Texas Windstorm Insurance Association policy to cover the Property from windstorm damages. BOA failed to make the money available from Plaintiff's escrow despite F.B. Taylor's request that it do so within time to renew Plaintiff's Texas Windstorm Insurance Association homeowner's policy.

Johnson responded, "Um-hum." She then stated, "I believe Bank of America had the money." When asked if she believed that BOA failed to make the money available, she responded, "[n]o, I don't." When asked if she knew when BOA made the money available, Johnson replied, "I know that I spoke with the lady that told me that the money was made available on September 3rd that—" Johnson also testified as follows:

> Q. Okay. And that's the money that you had given Bank of America to send to F.B. Taylor to pay your premiums?
> A. That's correct.
> Q. Okay. And as part of this understanding that F.B. Taylor would keep your insurance in force, did you also assure F.B. Taylor that you would make sure they were provided with the money necessary to keep your insurance in force?
> ....
> A. Yes.
> Q. And was that done in September of 2008 with regard to your windstorm policy?
> A. Was what done?
> Q. Was the money provided to F.B. Taylor in time for them to keep it in force?
> A. Yes.
> Q. And you believe that based on them having received the money on the 10th, right?
> A. They received the money before the policy lapsed, yes.

Johnson recalled that Janice at F.B. Taylor told her that she had the money from BOA but did not send it off before evacuating for the hurricane. Janice did not tell Johnson when F.B. Taylor received the money or why it was not sent to TWIA before the hurricane. Janice did not tell Johnson anything about whether it could have been sent or how it would have been sent. Johnson also recalled that she had a conversation with George Taylor at F.B. Taylor in June of 2009. She recalled that Taylor told her "he had been assured that everything had been taken care of before they shut down their office and evacuated for the hurricane." She believes that his statement to her included his beliefs about her policy specifically and the business generally. She recalled that eventually George Taylor told her that there was no insurance and "[i]t was on him to make it right."

BOA also argues that F.B. Taylor's purported admission that it timely received the renewal check from BOA, but failed to forward the payment to TWIA conclusively establishes that BOA timely performed. George Taylor testified on behalf of F.B. Taylor. He indicated that under the TWIA rules, if a check is mailed on or before the expiration date of the policy, it will renew the policy. He testified that Johnson's policy expired on September 12, 2008 at 12:01 a.m. He received the check from BOA on September 10, 2008. He acknowledged that no one from his

20

office went to the post office on September 11, 2008, but had the check been mailed on September 11, 2008, the windstorm policy would have been renewed.

The testimony relied on by BOA does not conclusively establish that the timeliness of BOA's disbursement of funds was reasonable under the circumstances. We note that BOA does not argue that Johnson's alleged "admissions" amount to judicial admissions. Even assuming for the sake of argument that Johnson's testimonial statements amounted to judicial admissions regarding BOA's timeliness in disbursing the premium payments, BOA failed to preserve its right to rely on the admissions as judicial admissions by failing to object and obtain a ruling on subsequent controverting evidence. *See Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989) (holding that plaintiff waived his right to rely upon his opponent's admissions because those admissions were controverted by testimony admitted at trial without objection); *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 765 (Tex. 1987) (holding that defendants could not benefit from purported judicial admission when they failed to timely object to jury issue that was contrary to facts admitted in plaintiffs' pleadings); *Houston First Am. Savings v. Musick*, 650 S.W.2d 764, 769 (Tex. 1983) (explaining that the party relying on an admission by an opponent must protect the record by objecting to the introduction of evidence contrary to the admission and by objecting to the

21

submission of any issue bearing on the fact admitted). Here, as explained above, BOA failed to obtain rulings on its objections to Johnson's summary judgment evidence supporting her breach of contract claim. Even if BOA had obtained rulings on its objections, BOA never objected to Johnson's evidence on the ground that it was contrary to Johnson's purported judicial admissions. Thus, BOA did not timely protect its reliance, if any, on Johnson's purported judicial admissions.

Further, when we look at the context and totality of the statements BOA labels as admissions, we cannot say they conclusively establish that BOA met its obligations under the Deed of Trust. At most, Johnson testified that she believed F.B. Taylor received the premium payment in time to prevent a lapse in her coverage because F.B. Taylor "received the money before the policy lapsed[.]" The fact that F.B. Taylor received the payment before the policy expired is undisputed and is not contrary to an essential fact embraced by Johnson's claim. Additionally, this fact alone does not conclusively establish that BOA met its obligations under the Deed of Trust to timely disburse the premium payments. As explained above, the Deed of Trust requires BOA to do more than just remit the funds before the expiration of the policy. Furthermore, Johnson's belief that F.B. Taylor had time to fulfill its obligations to her because F.B. Taylor received the payment before the policy's expiration is nothing more than the impression she

gathered in litigating her case. Her purported admission, which she quantified as being based on the fact that F.B. Taylor received the payment before the policy's expiration, did not eliminate the possibility that she could be mistaken about her belief of F.B. Taylor's ability to process the payment timely. Taylor's testimony, at most, establishes that had he been able to place a check to TWIA in the mail on September 11, 2008, Johnson's windstorm policy would have been renewed. The statements BOA relies on are not conclusive as to the breach of contract issue.

Johnson countered BOA's evidence with evidence that BOA's delay in sending the funds to F.B. Taylor made it impossible for F.B. Taylor to timely renew the policy. Taylor testified that his office received the check from BOA on September 10, 2008 at 5:08 p.m. According to Taylor, his office did not receive the check from BOA in sufficient time to process it to prevent a lapse in coverage. His specific testimony follows:

> Q. If your office received this check on September 10th, as is indicated by that stamp, would you [have] had sufficient time to renew Ms. Johnson's Texas Windstorm policy to where she wouldn't have had a lapse in coverage during Hurricane Ike?
> A. No.
> Q. And why not?
> A. Because we didn't receive it in time to process it.
> Q. Tell me . . . more about that. What do you mean by process it?
> A. Once we get the check, we have to deposit the check. We have to reissue our check. We can't send this check in.
>     ….

Q. Is there anything that would have prevented you from sending a check with your own upon receipt of this in order no [sic] bind the policy?
A. I didn't get this check until about 5:08, as I remember, in the afternoon.
Q. Okay.
A. My office was closed. The post office was closed. My computers were turned down. Everybody was gone. It was impossible to get this done.
Q. And where did you go when you evacuated?
      ….
A. Baton Rouge, Louisiana.
Q. Baton Rouge. Were the post offices functioning there?
A. I don't know.

Taylor also testified:

Q. And then a check would be cut by F.B. Taylor for renewal of that premium.
A. Correct.
Q. Which would then be deposited in the mail on that –
A. That afternoon.
Q. –afternoon mail. So, the turn-around time is typically 24 hours.
A. Yes.

While the complete context of this line of questioning is not in the summary judgment record, what is present seems to imply that typically F.B. Taylor can process a check from the lender in twenty-four hours.

Johnson contends that BOA knew that time was of the essence because BOA knew Johnson's policy expired on September 12. BOA's corporate representative, Grzeskowiak, testified that BOA's automated system notified BOA on September 3 that Johnson's policy would expire September 12. BOA mailed the check to F.B.

24

Taylor on September 4. Grzeskowiak testified that in his experience it takes approximately eight days for a check to arrive in the agency's office after BOA mails it. He agreed that if BOA mailed the check on September 4, BOA could foresee that the check would not arrive at F.B. Taylor until September 12, the same day the policy expired. Grzeskowiak testified that it is standard business practice to send the escrow checks to the agent so that the agent receives the check five days before the expiration of the insurance policy. He further testified that this five-day rule was BOA's practice. Grzeskowiak acknowledged that F.B. Taylor sent BOA a letter, which was in BOA's system indicating that F.B. Taylor needed to have the payment in its office five days before September 12, 2008 in order to keep the policy in effect. He also acknowledged that BOA did not send the escrow check early enough for it to arrive at the F.B. Taylor office five days before Johnson's policy expired. As such, the summary judgment evidence raises a genuine issue of material fact as to whether BOA breached its contractual duties under the Deed of Trust to timely remit funds in a reasonable manner when BOA's remittance of the escrow funds failed to comply with standard business practice, failed to comply with BOA's own policy, and failed to comply with the express instructions F.B. Taylor provided BOA.

BOA also argues that it conclusively established that F.B. Taylor, not BOA, was the sole cause of Johnson's damages. BOA cites to Johnson's deposition testimony that Taylor had informed her that the property was uninsured and it "was on him to make it right[.]" BOA essentially argues that this testimony established that F.B. Taylor's actions were the sole cause of Johnson's damages. However, Taylor's testimony, when viewed in the light most favorable to Johnson, supports that BOA's untimely remittance of the funds made it impossible for F.B. Taylor to pay the TWIA premium timely. We conclude that the evidence demonstrates that Johnson has raised a genuine issue of material fact as to whether BOA's untimely payment caused the lapse in Johnson's TWIA coverage.

Viewing the evidence in a light most favorable to Johnson, we conclude that BOA has not conclusively established that it did not breach the Deed of Trust and that its actions were not a cause of Johnson's injuries, and that Johnson has raised a genuine issue of material fact on these issues, which preclude summary judgment. We sustain Johnson's second, third, fourth, and eighth issues inasmuch as they relate to the issues discussed above regarding the breach of contract claims.

### V. Negligence and Negligent Misrepresentation

Johnson contends that BOA failed to establish conclusively that her negligence and negligent misrepresentation claims were barred by the economic

26

loss rule. In *Sharyland Water Supply Corp. v. City of Alton*, the Texas Supreme Court explained that the "'economic loss rule'" is "something of a misnomer[.]"[5] 354 S.W.3d 407, 415 (Tex. 2011). However, a basic understanding of the rule, as applicable to this case, is that a party should only be able to recover in contract and not in tort when the injury is limited purely to economic losses suffered to the subject matter of a contract. *James J. Flanagan Shipping Corp. v. Del Monte Fresh Produce N.A., Inc.,* 403 S.W.3d 360, 365 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

Texas courts have generally applied the economic loss rule in cases involving defective products and in cases involving the failure to perform a contract. *Sharyland*, 354 S.W.3d at 418. The economic loss rule has also been applied in cases involving claims for negligent misrepresentation. *See D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663-64 (Tex. 1998) (per curiam). To determine whether the economic loss rule applies, we consider "'both the source of the defendant's duty to act (whether it arose solely out of the contract or from some common-law duty) and the nature of the remedy sought by the

---

[5] "'[T]here is not one economic loss rule broadly applicable throughout the field of torts, but rather several more limited rules that govern recovery of economic losses in selected areas of the law.'" *Sharyland*, 354 S.W.3d at 415 (quoting Vincent R. Johnson, *The Boundary–Line Function of the Economic Loss Rule,* 66 WASH. & LEE L. REV. 523, 534-35 (2009)).

plaintiff.'" *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998) (quoting *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13 (Tex. 1996)). We look at the substance of the cause of action and not simply the manner in which it was pleaded to determine the type of action that is brought. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 617-18 (Tex. 1986). "The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Id*. at 618. In some circumstances, a party's actions may breach duties simultaneously in contract and in tort. *See id*. To maintain a separate tort action, the plaintiff must show that he has "suffered an injury that is distinct, separate, and independent from the economic losses recoverable under a breach of contract claim." *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 797 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (citing *D.S.A. Inc.*, 973 S.W.2d at 664).

## A. Negligence

Johnson generally responds to BOA's economic loss argument by claiming that she is not seeking to recover economic losses but rather she is seeking to recover the costs of repairing her home. However, there is no allegation that BOA's actions or inactions caused the actual damage to her home. Johnson alleges

that Hurricane Ike damaged her home. The foundation of Johnson's complaint is that she was denied insurance proceeds because BOA failed to carry out its obligation under the Deed of Trust to timely disburse her escrow payment. BOA's failure to disperse the escrow funds timely did not cause the damage to Johnson's home, Hurricane Ike did. Johnson's injury is the loss of insurance proceeds that she allegedly would have received if BOA had fulfilled its obligations under the Deed of Trust.

The gravamen of Johnson's negligence complaint is that BOA had a duty to timely disburse Johnson's windstorm policy premium and failed to do so. The subject matter of the contract provision at issue in this case was BOA's timely disbursement of escrow funds. The injury suffered by Johnson is an economic loss to the subject matter of the contract—the denial of insurance coverage because of BOA's failure to timely pay premiums.

Johnson argues for the first time on appeal that her tort claims do not solely arise from contract obligations, but also under federal law. Specifically, she argues that BOA had a duty to timely forward the escrowed premium payments to F.B. Taylor under RESPA. Because Johnson did not raise this argument with the trial court, she has waived this argument. *See* Tex. R. App. P. 33.1; Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion,

29

answer[,] or other response shall not be considered on appeal as grounds for reversal."). Even if she had raised this argument to the trial court, Johnson has not alleged a cause of action or sought relief under RESPA, or alleged BOA had a duty under RESPA.

Johnson has failed to show that she suffered an injury that is distinct, separate, and independent from the economic losses recoverable under her breach of contract claim. Johnson's negligence claim is a recasting of her claim for economic loss for breach of contract and is precluded by the economic loss rule. *See Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) (holding where the only duty between the parties arises from a contract, a breach of that duty will ordinarily sound only in contract, not in tort). We overrule Johnson's fifth and ninth issues inasmuch as they concern claims for negligence.

## B. Negligent Misrepresentation

The burden to prove an independent injury is on the plaintiff claiming negligent misrepresentation. *Plano Surgery Ctr. v. New You Weight Mgmt. Ctr.*, 265 S.W.3d 496, 503 (Tex. App.—Dallas 2008, no pet.). In support of her negligent misrepresentation claim, Johnson argues that BOA falsely represented to her that "her insurance policy would be paid on time with the funds deposited by Plaintiff in her escrow account." However, the duty to timely pay the funds out of

30

Johnson's escrow account arises under the Deed of Trust and falls within the pleaded breach of contract claim. Therefore, any injury due to negligent misrepresentation is not independent of the damages for breach of contract. *See Blue Star Operating Co. v. Tetra Techs., Inc.*, 119 S.W.3d 916, 922 (Tex. App.—Dallas 2003, pet. denied). We overrule Johnson's fifth and tenth issues inasmuch as they concern claims for negligent misrepresentation.

## VI. Violations of the DTPA

Johnson contends that BOA failed to establish conclusively that her DTPA claims were barred by the economic loss rule. In her petition, Johnson alleges that BOA's conduct constitutes multiple violations of the DTPA. *See* Tex. Bus. & Com. Code Ann. 17.41-.63 (West 2011 & West Supp. 2014). Johnson's third amended petition asserts five violations under Texas Business and Commerce Code section 17.46, including violations of subsections (b)(5), (7), (9), (12), and (24). However, in her brief to this Court, Johnson only argues a fact question as to violations of three subsections—(b)(5), (b)(6), and (b)(24). Because Johnson did not raise a violation of subsection (b)(6) with the trial court, her argument with respect to subsection (b)(6) has been waived for purposes of appeal. *See* Tex. R. App. P. 33.1.

With regards to her allegations under subsection (b)(5), Johnson contends the evidence shows that BOA "misrepresented that it would be forwarding the payments for her insurance premium in time for the policy to be renewed[,]" and thus misrepresented that the Note had characteristics that it did not have. BOA responds that Johnson's DTPA allegations are nothing more than a recasting of her breach of contract claim.

In *Crawford v. Ace Sign, Inc.*, the Texas Supreme Court affirmed the rule that when a party alleges merely a breach of contract claim, without more, the breach of contract allegation does not constitute a false, misleading, or deceptive act in violation of the DTPA. 917 S.W.2d 12, 14 (Tex. 1996) (quoting *Ashford Dev., Inc. v. USLife Real Estate Servs.*, 661 S.W.2d 933, 935 (Tex. 1983)). The plaintiff in *Crawford* contracted for services in the form of an advertisement in a directory. 917 S.W.2d at 13. The plaintiff alleged that the sales agent represented to him that the success of his business was heavily dependent upon the advertising, and that the advertisement would increase his business by at least seventy to eighty percent in the first year. *Id*. The sales agent also told the plaintiff that if he paid the full price upfront, his advertisement would appear in a particular edition. *Id*. Based on these representations, the plaintiff agreed to renew a written contract for

32

advertising. *Id*. Subsequently, the defendant failed to print the advertisement as promised. *Id*.

The plaintiff argued that the defendant not only failed to publish the advertising as required by the contract but also made certain misrepresentations during the meeting at which the plaintiff had agreed to renew his contract. *Id*. at 14. Notwithstanding these allegations, the Court rejected the plaintiff's argument that the case was actionable under the DTPA. *Id*. The Court concluded that the defendant's statements, including the alleged misrepresentations, "were nothing more than representations that the defendants would fulfill their contractual duty to publish, and the breach of that duty sounds only in contract." *Id*. The Court explained that "[t]he *statements* themselves did not cause any harm. The failure to run the advertisement (the breach of the contract) actually caused the lost profits, and that injury is governed by contract law, not the DTPA." *Id*. at 14-15 (emphasis in original).

The misrepresentation that Johnson claims BOA made was that BOA misrepresented that it would timely pay the premium to renew her windstorm insurance. This representation is nothing more than a representation that BOA would fulfill its contractual duties under the Deed of Trust. The representation itself did not cause harm, but rather BOA's failure to pay the premium timely

33

allegedly caused the harm of which Johnson complains. The nature of Johnson's injury flows from the breach of contract and not the representation that Johnson has alleged to be a violation of the DTPA. Therefore, Johnson has failed to show that she suffered an injury under subsection (b)(5) that is distinct, separate, and independent from the economic losses recoverable under her breach of contract claim.

Johnson further pleaded that BOA violated the DTPA by failing "to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed[.]" *See* Tex. Bus. & Com. Code Ann. § 17.46 (b)(24). In response, BOA argued to the trial court that Johnson could not produce evidence that BOA engaged in a false, misleading, or deceptive act under the DTPA. BOA did not brief this issue on appeal. However, because the trial court's summary judgment order did not state the grounds upon which the summary judgment was granted, we must address all grounds raised by BOA in its motion for summary judgment. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989). Johnson alleges that BOA violated section 17.46(b)(24) by failing to disclose to

34

her information that BOA had at the time of the transaction—i.e., that BOA did not have any procedures in place to prevent untimely disbursement of premium funds.

To prevail on a DTPA claim, the plaintiff must demonstrate (1) the plaintiff's status as a consumer, (2) the defendant can be sued under the DTPA, (3) the defendant committed a wrongful act under the DTPA, and (4) the defendant's actions were a producing cause of the plaintiff's damages. Tex. Bus. & Com. Code Ann. § 17.50(a). To prove a DTPA action for failure to disclose information, the plaintiff must show (1) a failure to disclose information concerning goods or services; (2) the information was known at the time of the transaction; (3) the failure to disclose was intended to induce the plaintiff into a transaction; and (4) that the plaintiff otherwise would not have entered the transaction if the information had been disclosed. Tex. Bus. & Com. Code § 17.46(b)(24).

The record contains no evidence that BOA was aware of the necessity to have a different policy in place to prevent what happened in this case. BOA's corporate representative testified that if someone requests BOA to send a check overnight, BOA will do so. He testified that if F.B. Taylor had requested it, the money could have been wired to F.B. Taylor's account. Grzeskowiak also testified that BOA's computer system is set up to automatically notify BOA when a policy is set to expire and prompts BOA to contact the agent. This testimony suggests

35

that BOA had at least some policies in place for dealing with last-minute renewals. There is no evidence in the record before us that BOA did not believe at the time it entered into the Deed of Trust with Johnson that the policies it did have in place were insufficient to meet its obligations under the Deed of Trust. Moreover, there is no evidence that BOA withheld any information, known or otherwise, with the intention of inducing Johnson to enter into the Deed of Trust. The trial court did not err in granting summary judgment on Johnson's DTPA claim under section 17.46(b)(24). Because our ruling on Johnson's claim under section 17.46(b)(24) is dispositive, we need not address whether this claim is also barred under the economic loss doctrine. We overrule Johnson's eleventh issue.

## VII. Fraud

Johnson contends that BOA failed to establish conclusively that her fraud claim was barred by the economic loss rule. She further argues there are genuine issues of material fact that preclude summary judgment on her fraud claim against BOA. In its motion for summary judgment, BOA's argument with respect to Johnson's fraud claim was twofold: first, Johnson's fraud claim is merely a restatement of her cause of action based on breach of contract, and secondly, even if Johnson did plead a valid cause of action for fraud, there was no summary judgment evidence of any of the essential elements of common law fraud. We note

36

that BOA did not brief its no-evidence points on appeal regarding its fraud claim. However, because the trial court's summary judgment order did not state the grounds upon which the summary judgment was granted, we must address all grounds raised by BOA in its motion for summary judgment. *See Carr*, 776 S.W.2d at 569.

We find that Johnson has failed to raise a genuine fact issue on her fraud claim. Johnson contends that

> [BOA] misrepresented to Plaintiff that it would take care of adequately paying for the premium of the insurance policy covering Plaintiff's property from risk when in fact Defendant failed to do so, as evidenced by the fact that Defendant's corporate representative admitted that the manner in which Defendant issued and sent the payment for Plaintiff's policy precluded her policy to be renewed on time.

To succeed on her common law fraud claim, Johnson must establish: (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Italian Cowboy*, 341 S.W.3d at 337. Failure to perform a contractual promise, standing alone, does not constitute evidence of fraud. *See Morgan Bldgs.*

37

*& Spas, Inc. v. Humane Soc'y of Se. Tex.*, 249 S.W.3d 480, 489 (Tex. App.—Beaumont 2008, no pet.). However, "[a] promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act." *Werth v. Johnson*, 294 S.W.3d 908, 909 (Tex. App.—Beaumont, 2009, no pet.) (citing *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986)).

Johnson's basic theory is that BOA made a false promise of future performance to her, that is, BOA made a false promise to timely pay her premiums out of her escrow account. To prove a false promise of future performance, Johnson must establish that BOA made a promise to Johnson with no intention of performing it. *See Werth*, 294 S.W.3d at 909. There is nothing in Johnson's petition, her responses, or the summary judgment evidence that BOA's alleged promise of future timely disbursements was made by BOA with the intent at the time the contract was entered into by the parties not to perform the promise. Johnson argues that at the time BOA made the representations to her that it would timely pay her premiums, "[BOA] either knew them to be false or made them recklessly without any knowledge of their truth as positive assertions, as it knew that it had no procedures in place for timely issuing and sending payments for insurance policies that were set to expire close to the date the payment is issued."

38

However, the testimony Johnson relies on as evidence does not support this allegation. Johnson cites to the deposition testimony of Grzeskowiak, which concerns what BOA allegedly knew when it issued the check in September, not what it knew when it entered into the agreement with Johnson years before.

We hold that the summary judgment proof shows as a matter of law that one of the necessary elements of common law fraud, the lack of intent to perform promise at the time it was made, is completely lacking. We therefore overrule Johnson's twelfth issue. Because our ruling on Johnson's twelfth issue is dispositive of this claim, we need not address whether her claim is barred under the economic loss doctrine.

## VIII. Breach of Fiduciary Duty

Johnson contends that her fiduciary duty claim is not barred by the economic loss rule. According to Johnson, BOA's fiduciary duty existed independent of the Deed of Trust and stems instead from BOA's position as her escrow agent. It is true that courts have declined to apply the economic loss rule where the fiduciary duty breached "existed independent of [the] contract[.]" *See Flanagan*, 403 S.W.3d at 366. However, we disagree that BOA had a fiduciary duty as Johnson's escrow agent.

39

It is axiomatic that to establish a breach of fiduciary duty, a plaintiff must first show a fiduciary relationship between herself and the defendant. *See Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied) (identifying the elements of a breach of fiduciary duty claim). The record supports that the relationship between Johnson and BOA can be described a number of different ways: borrower and lender, bank and customer, mortgagor and mortgagee, mortgagor and mortgage servicer, and escrow agent and escrow account holder. These types of relationships are not, as a matter of law, fiduciary or otherwise special. The relationship between a borrower and a lender or a bank and its customers does not usually create a special or fiduciary relationship. *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 675 (Tex. App.—Houston [1st Dist.] 1996, no writ); *see also Jones v. Thompson*, 338 S.W.3d 573, 583 (Tex. App.—El Paso 2010, pet. denied) (holding lenders owe no fiduciary duties to their borrowers); *Bank One, Tex., N.A. v. Stewart*, 967 S.W.2d 419, 442 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) ("A special relationship does not usually exist between a borrower and lender, and when Texas courts have found one, the findings have rested on extraneous facts and conduct, such as excessive lender control or influence in the borrower's business activities."). The relationship between a mortgagor and a mortgagee ordinarily does not involve a duty of good

40

faith. *FDIC v. Coleman*, 795 S.W.2d 706, 709 (Tex. 1990); *see also Lovell v. W. Nat'l Life Ins. Co.*, 754 S.W.2d 298, 303 (Tex. App.—Amarillo 1988, writ denied) (noting "the great weight of authority is that while the relationship between the mortgagor and mortgagee is often described as one of trust, technically it is not of a fiduciary character"). "An escrow agent's duties are strictly limited to those set forth in the escrow agreement." *Blume*, 196 S.W.3d at 448. "[W]hen the escrow agreement simply provides for the payment of funds by the mortgagor into an account for the mortgagee's use to meet tax, insurance, and other obligations . . . no fiduciary relationship is created." *Garcia v. Bank of Am. Corp.*, 375 S.W.3d 322, 333 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Here, BOA's duties are limited to those set forth in the Deed of Trust, which contains the escrow arrangement. BOA's servicer duties are purely contractual since its sole obligation is to collect the payments due and disburse those monies as required by the Deed of Trust. There is no evidence in the record of excessive lender control or influence in Johnson's personal business activities. Johnson's breach of fiduciary duty claim is not distinct, separate, or independent from her breach of contract claim. Therefore, the trial court did not err in granting summary judgment on Johnson's breach of fiduciary duty claim. We overrule Johnson's fourteenth issue.

## IX. Conclusion

In summary, the trial court properly granted summary judgment in favor of Bank of America on Johnson's claims for negligence, negligent misrepresentation, DTPA violations, fraud, and breach of fiduciary duty. We have concluded a genuine issue of material fact exists on Johnson's breach of contract claim. Thus, the trial court erred in granting summary judgment on Johnson's breach of contract claim. We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

As to all other causes of action asserted by Johnson against Bank of America herein, we conclude Johnson failed to raise a genuine issue of material fact as to these issues and affirm the trial court's judgments.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

_____
CHARLES KREGER
Justice

Submitted on October 24, 2013
Opinion Delivered October 30, 2014

Before McKeithen, C.J., Kreger, and Horton, JJ.

42